Max FECHT, On behalf of himself and all others similarly situated; Errol Marcus; Norman Cooper; Hamilton J. Sah, et al., Plaintiffs–Appellants,

v.

The PRICE COMPANY; Robert W. Price; Dennis R. Zook; Theodore Wallace, et al., Defendants–Appellees.

No. 93–55541.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1994.

Submission Withdrawn Oct. 20, 1994.

Resubmitted Jan. 3, 1995.

Decided Nov. 20, 1995.

William S. Lerach, Eric A. Isaacson & Dennis Stewart, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, California, for plaintiffs-appellants.

Gerald L. McMahon, James P. Delphey, Seltzer, Caplan, Wilkins & McMahon, San Diego, California, for defendants-appellees.

Before: D.W. NELSON, NORRIS, and BOGGS,* Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Plaintiffs appeal the district court's dismissal of their securities fraud action on the grounds that it failed to meet the requirements of Fed.R.Civ.P. 12(b)(6) and 9(b). We review the district court's dismissal *de novo, Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439–40 (9th Cir.1987), and reverse and remand to the district court.

* Honorable Danny J. Boggs, United States Court of Appeals for the Sixth Circuit, sitting by designation.

## I

Over the course of two days in early April, 1992, the price of the stock of The Price Company ("Company") fell from $45 per share to $32 per share. The decline occurred immediately after the Company announced a drop in its net income for the first quarter of 1992, the first year-to-year earnings decline in the Company's history. On the day following the announcement, plaintiffs filed this class action seeking damages for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC"), and various California laws prohibiting fraud.

In their second amended complaint ("Complaint"), plaintiffs allege that prior to the April 2 announcement, the Company and three of its top-ranking officers intentionally misrepresented the financial condition of the Company, in particular its expansion program's prospects for enhancing the Company's earnings. The Complaint cites various public statements—either prepared by the Company itself (Shareholder Reports, Form 10–Qs, Form 10–K, newspaper interviews) or prepared by securities analysts with the approval and guidance of the Company—and alleges that these statements created the impression that the Company was successfully expanding its retail warehouse operations when, in fact, the Company's expansion program was failing. Complaint, ¶¶ 27–56, 59. The Complaint asserts that these statements were thus "false and misleading and operated to inflate the market price of Price Company's publicly traded securities." Complaint ¶ 25. The Complaint also alleges that the Company's SEC reports were "false and misleading because of their omission of the ma-

terial adverse information" known to the defendants regarding the expansion program. Complaint ¶ 26. The district court concluded that the allegations of 10b–5 violations and of fraud were insufficient and dismissed the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) without leave to amend.

## II

The district court held that the Complaint failed to plead adequately the first element of a 10b–5 cause of action—that the defendant made materially misleading statements or omissions, *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988). After examining the full texts of the source documents cited in the Complaint,[1] the district court concluded as a matter of law that (1) the public statements were not misleading because they included cautionary or guarded language, and (2) the defendants' failure to disclose the losses sustained by the warehouses opened in the expansion program was not a *material* omission because it is the profitability of the Company as a whole, not any one particular aspect of the Company's operations, that is significant. We disagree that the question whether an omission is material or a statement is misleading can be determined in this case as a matter of law.

Whether an omission is "material" is a determination that "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct.

---

1. Defendants attached to their motion to dismiss the full text of the Company's corporate disclosure documents and the securities analysts' reports quoted in the Complaint. Plaintiffs argue that because the district court considered the full text of these documents—many portions of which were not pleaded in the Complaint—defendants' motion to dismiss should have been converted into a motion for summary judgment, affording plaintiffs the opportunity to present additional evidentiary materials. This argument is foreclosed by *Branch v. Tunnell*, 14 F.3d 449 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), in which we stated:

As it makes sense and comports with existing practice, we hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does "not convert the motion to dismiss into a motion for summary judgment."

*Id.* at 454 (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991)).

2126, 2133, 48 L.Ed.2d 757 (1976); *accord United States v. Gaudin*, —— U.S. ——, ——, 115 S.Ct. 2310, 2314, 132 L.Ed.2d 444 (1995) (materiality is an "application-of-legal-standard-to-fact sort of question ... [that] has typically been resolved by juries"); *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir.1994) ("materiality" is a "fact-specific issue[ ] which should ordinarily be left to the trier of fact"), *cert. denied*, —— U.S. ——, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995). Similarly, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir.) (quoting *TSC Indus.*, 426 U.S. at 450, 96 S.Ct. at 2133, and stating that "[l]ike materiality, adequacy of disclosure is normally a jury question"), *cert. denied*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). Therefore, only if the adequacy of the disclosure or the materiality of the statement is "so obvious that reasonable minds [could] not differ" are these issues "appropriately resolved as a matter of law." *Durning*, 815 F.2d at 1268; *accord TSC Indus.*, 426 U.S. at 450, 96 S.Ct. at 2133.

 The cautionary statements cited by the district court, when considered against the backdrop of the allegations set forth in Paragraph 59 of the Complaint ("Price Company's Undisclosed Adverse Information")[2] —allegations which at this stage we must accept as true, *Durning*, 815 F.2d at 1267,— do not "so obviously" render the challenged public documents not misleading as to permit the adequacy of the disclosure to be determined as a matter of law.

For example, in one Report to Shareholders, the Company states that it "anticipates a continuation of its accelerated expansion schedule...." Complaint ¶ 27. This statement, even in the context of the Company's acknowledgment that it "feel[s] a little more optimistic about our near-term future than

[it] did at the end of the last quarter," which the district court relied on as an admission that the Company had not been too happy with the earlier sales, could reasonably be interpreted as conveying a level of confidence in the continued viability of the expansion program not borne out by the adverse facts allegedly known to the defendants. In another Report to Shareholders, the Company predicted an "overall improvement in the sales trend due [in part] to the large number (24) of new Price Clubs." Complaint ¶ 32. This statement could also reasonably be considered misleading when, as alleged by plaintiffs, most of the new stores were actually losing money. The follow-up statement relied on by the district court that "[e]arnings may not increase at as high a rate as sales because of the ... operating costs associated with opening new Price Clubs," not only does not cure, but arguably contributes to the alleged misconception that the new stores were increasing the Company's profitability because it assumes an increase in earnings and focuses only on the rate of that increase. Thus, as these examples illustrate, the mix of information contained in the public documents issued by the Company does not clearly preclude "reasonable minds" from differing on the question of whether they included misleading statements.

 Defendants attempt to support the district court's resolution of the "misleading" question as a matter of law by relying on the "bespeaks caution" doctrine. We have recognized that the "bespeaks caution" doctrine "provides a mechanism by which a court can rule as a matter of law ... that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir.1994) (citation omitted), *cert. denied*, —— U.S. —— & ——, 116 S.Ct. 185 & 277, 133 L.Ed.2d 123

---

2. As alleged in Paragraph 59 of the Complaint, the following material information was known, but withheld, by the defendants: the Company was experiencing consistent losses in almost all of its new stores; initial sales volumes in the new stores were well below the levels usually experienced upon new store openings and well below the levels necessary to achieve profitable opera-

tions; the East Coast and Canadian stores were performing worse than expected; the expansion program was being implemented too rapidly and without adequate feasibility studies; the expansion program was adversely affecting the Company's profitability; and no reasonable basis existed for the bullish forecasts concerning the expansion program.

& 197 (1995). However, we have also recognized that the "bespeaks caution" doctrine reflects nothing more than "the unremarkable proposition that statements must be analyzed in context." *Id.* at 1414 (quoting *Rubinstein v. Collins*, 20 F.3d 160, 167 (5th Cir.1994)). In other words, the doctrine is merely a new name for a venerable precept that does not alter the standard for deciding questions as a matter of law.

The "bespeaks caution" doctrine is thus wholly consistent with our analysis that whether a statement in a public document is misleading may be determined as a matter of law only when reasonable minds could not disagree as to whether the *mix* of information in the document is misleading. Inclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097, 111 S.Ct. 2749, 2760, 115 L.Ed.2d 929 (1991) ("a misleading statement will not always lose its deceptive edge simply by joinder with others that are true...."). A motion to dismiss for failure to state a claim will succeed only when the documents containing defendants' challenged statements include "*enough* cautionary language or risk disclosure," *Worlds of Wonder*, 35 F.3d at 1413 (citation omitted) (emphasis added), that "reasonable minds" could not disagree that the challenged statements were not misleading. The defendants' statements here do not meet this requirement, and invocation of the "bespeaks caution" doctrine cannot save the defendants' 12(b)(6) motion.

In sum, the Complaint sets forth public statements and omissions that reasonable jurors could find to be materially misleading. Neither Rule 12(b)(6) nor the "bespeaks caution" doctrine requires more. Therefore, the complaint alleges all the elements of a 10b–5 cause of action and, accordingly, the district court erred in dismissing the Complaint for failure to state a claim upon which relief could be granted.

## III

We now turn to the second issue raised by the appeal: Does the complaint allege fraud with sufficient particularity to withstand a challenge pursuant to Fed.R.Civ.P. 9(b)?[3]

■■■ "In a securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Kaplan v. Rose*, 49 F.3d at 1370. This notice requirement is satisfied by allegations of the "time, place and nature of the alleged fraudulent activities." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir.1973). When a fraudulent statement is alleged, the "plaintiff must set forth what is false or misleading about [the] statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994) (en banc).[4] In other words, the plaintiff must "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made.*" *Id.* at 1549 (emphasis in original). Thus *GlenFed* requires a plaintiff to plead evidentiary facts and the court to consider what inferences these facts will support—despite the pitfalls and inefficiencies of such an analysis at the pleading stage, *id.* at 1556 (Norris, J., concurring)—and whether they are sufficient to satisfy the specificity requirement of Rule 9(b) as interpreted by *GlenFed.*

The *GlenFed* standard is most easily satisfied when there is direct evidence of fraud, i.e., "[inconsistent] facts that had existed all along and were later revealed." *Id.* at 1549. In these cases, a plaintiff may simply set forth these facts (along with allegations of

---

3. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

4. With respect to scienter, the plaintiffs need "simply ... say[ ] that scienter existed" to satisfy the requirements of Rule 9(b). *GlenFed*, 42 F.3d at 1547. Although the district court found that

the Complaint's allegations of scienter were insufficient, the allegations, Complaint ¶¶ 25, 61 ("defendants knew the impression created by this conduct and these statements ... was false and misleading ..."; "Price Company was ... aware that the securities analysts' reports were based on information publicly disseminated by Price Company ... and that these reports were false and misleading ..."), clearly meet the *GlenFed* standard.

time, place, and scienter) and satisfy Rule 9(b). *Id.* at 1548. Thus, a complaint alleging that the plaintiff bought a house from the defendant, that the defendant assured the plaintiff that the house was in perfect shape, and that the house was in fact built on landfill, would satisfy rule 9(b). *Id.*

A plaintiff may also satisfy Rule 9(b) with allegations of circumstantial evidence if the circumstantial evidence alleged explains how and why the statement was misleading when made. *See id.* at 1549. Thus, when there is an intervening event which might account for the conflict between the alleged misrepresentation and the current state of facts, for instance a general decline in the stock market or an event internal to the company such as a revaluation of assets, a plaintiff may satisfy Rule 9(b) by alleging inconsistent contemporaneous statements indicating that the defendant knew all along that the earlier statement was false, or by showing that the conflict does not result merely from the earlier statement's being based on a different but equally permissible business judgment. *Id.* at 1548–49.

■■■ We believe that sufficient evidentiary facts are pleaded to explain why the Company's statements were false when made and, thus, to satisfy the requirements of Rule 9(b) as interpreted by *GlenFed.* The Complaint alleges that the positive statements about the expansion program were false when made because, in truth, the new stores were losing money and the program overall was doing so poorly that it would have to be curtailed or abandoned. Complaint ¶¶ 5, 59(a)–(d). Thus plaintiffs allege facts that reveal that the statements failed to reflect the Company's true condition at the time the statements were made. A plaintiff may "draw on contemporaneous statements or conditions" to demonstrate why statements were false when

made. *Id.* at 1549; *see also In re Wells Fargo Sec. Litig.,* 12 F.3d 922, 930 (9th Cir. 1993) ("[s]tatements of ... opinions, or beliefs ... are actionable under § 10(b), if ... there is [no] reasonable basis for that belief....") (citation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994). More particularly, plaintiffs cite specific problems with the expansion program: unsatisfactory initial sales volumes at the new stores[5] and losses at specifically identified stores.[6] For purposes of Rule 9(b), allegations of specific problems undermining a defendant's optimistic claims suffice to explain *how* the claims are false. *See GlenFed,* 42 F.3d at 1551 ("[P]laintiffs have pointed to specific problems which they allege undermined defendants' optimistic claims: aged appraisals which concealed risk of loss; inaccuracies in the commercial real estate portfolio data base; inadequate controls on single-borrower loans. Thus this case ... is distinguishable from those cases ... in which plaintiffs stated simply that defendants' public statements were false, without explaining *how* they were false.") (emphasis in original); *Wells Fargo,* 12 F.3d at 926–27 (Rule 9(b) satisfied by allegations that bank understated its non-performing assets and reserves because it failed to account for defaults and doubtful collectibility of specifically identified problem loans).

In addition, the Complaint pleads facts that show that the decision to terminate the expansion program was made very shortly after the optimistic statements were made, i.e., the decision to terminate the program was announced on April 2, 1992, even though the Company was issuing positive statements about the program on January 14–16, 1992. Complaint ¶¶ 53–56. This shortness of time is circumstantial evidence that the optimistic statements were false when made. We give this circumstantial evidence more weight in

---

**5.** Paragraph 59(a) of the Complaint alleges: "That initial sales volumes of Price Company's stores newly opened during [the] Class Period were below levels usually experienced upon new store openings and levels necessary for the stores to achieve profitable operations...."

**6.** Paragraph 59(c) of the Complaint alleges: "That recent store openings in Maple Shade, New Jersey, Denver, Colorado, Vancouver, British Columbia, New Britain, Connecticut and Seekonk, Massachusetts were proceeding poorly and most of these units were losing money."

Paragraph 59(f) of the Complaint alleges: "That, at least for the near term, Price Company faced a major threat of eroding profits and declining margins because of the size of the losses being suffered at Price Company's newly opened stores, especially in Denver, Colorado and Vancouver, B.C." Paragraph 59(k) of the Complaint alleges: "That Price Company's new stores in Denver, Colorado and Vancouver, B.C. were performing very poorly and suffering significant losses that were adversely affecting Price Company's overall results."

view of the absence of any indication of an intervening catastrophic event. *See Glen-Fed*, 42 F.3d at 1549 (when no catastrophic event intervened between the time of the complained-of statements and the revelation of the truth, the particularity required by Rule 9(b) may be supplied by pointing to later inconsistent statements or conditions).

The weight of these averments also increases when they are read in conjunction with the Complaint's allegations that the optimistic statements permitted the successful offering of 73,000 shares of The Price REIT, which raised some $71 million for the Company. Complaint ¶¶ 36–42. Moreover, the Complaint alleges that two high-ranking company managers were making insider sales at inflated prices of Company stock during the period in which the optimistic statements were being issued. Complaint ¶¶ 13(b)–(c), 17, 68. The Complaint alleges that the Company's Chief Operating Officer for the West Coast and Chief Operating Officer for the Company's East Coast operations—two top executives involved in the expansion program—sold respectively 12,000 and 18,000 shares of Company stock for a total of $1.6 million during the period in which the allegedly false statements were being made. The Complaint pleads evidence that these sales represented significant retrenchments of the Company executives' own positions in the Company's stock: The sales by the COO for the West Coast involved all of the Company stock he had acquired by option during the period in which the optimistic statements were being made; the sales by the COO for the East Coast halved his total holdings in the Company. These sales are circumstantial evidence that the defendants knew or had reason to know that the financial condition of the Company was deteriorating well before they disclosed the problems with the expansion program. *See GlenFed*, 42 F.3d at 1550 (allegations of contemporaneous statements indicating difficulties facing sale of real estate subsidiary explain why public statements that company expected no loss from such a sale were false when made, thus satisfying Rule 9(b)); *Wells Fargo*, 12 F.3d at 930 ("statements of ... opinions, or beliefs ... are actionable under § 10(b), if ... the statement is [not] genuine-

ly believed, [or] ... the speaker is ... aware of any undisclosed facts tending to seriously undermine the accuracy of the statement") (citation omitted).

These allegations satisfy *GlenFed's* requirement that the plaintiffs "set forth what is false or misleading about [the] statement[s], and why it is false." *Id.* at 1548. The Complaint thus states the circumstances constituting the alleged fraud with the particularity Rule 9(b) requires. We therefore hold that the district court erred when it dismissed the Complaint for failure to comply with Rule 9(b).

REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.