Suna v. Bailey                              CV-94-273-M    12/29/95
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Vicki Match Suna; and Lori Rosen,
      Plaintiffs,

      v.                                          Civil No. 94-273-M

Bailey Corporation;
William A. Taylor; Roger R. Phillips;
Leonard Heilman; Louis T. Enos;
E. Gordon Young; and John G. Owens,
      Defendants.


                              O R D E R


      Plaintiffs bring this securities fraud action on behalf of

themselves and all persons who purchased stock of defendant

Bailey Corporation (the "Company") between August 18, 1993, and

May 20, 1994.  In Count I of their second amended complaint

plaintiffs allege that defendants violated section 10(b) of the

Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and

Security and Exchange Commission Rule 10-b, 17 C.F.R. §240.10b-5.

Plaintiffs also claim that defendants violated section 12(2) of

the Securities Act of 1933, 15 U.S.C. §77l(2) (Count II), and

that defendants made negligent misrepresentations upon which

plaintiffs relied when they decided to purchase the Company's

stock (Count III).  Defendants move to dismiss plaintiffs' second

amended complaint and this action in its entirety.

## Procedural History

By order dated November 10, 1994, the court granted defendants' motion to dismiss plaintiffs' original complaint, holding that plaintiffs failed to meet the pleading requirements of Rule 9(b), Fed.R.Civ.P.  Subsequently, plaintiffs sought leave to file their first amended complaint.  Again, however, the court found that plaintiffs failed to meet federal pleading requirements, concluding that:

> Upon review, the proposed amended complaint suffers from the same deficiencies detailed in the court's order dismissing the original complaint.  The plaintiffs' proposed amended complaint follows the same pattern as the original complaint -- long quotations from various public documents and press reports, followed by general allegations of misrepresentation by defendant.

Order, at 2.  (July 31, 1995).  Nevertheless, the court "reluctantly grant[ed] plaintiffs leave to file a second amended complaint," but cautioned plaintiffs that "should the second amended complaint fail to satisfy pleading requirements, the action will then be dismissed with prejudice."  Order, at 2 (July 31, 1995).

Plaintiffs have filed their second amended complaint, and defendants claim that it, like its predecessors, is fatally

2

deficient and must be dismissed. Defendants also move the court to dismiss plaintiffs' action in its entirety, arguing that after having failed on three occasions to properly set forth their claims and the factual allegations necessary to support them, plaintiffs should not be given any further opportunity to amend.

## Discussion

The factual background and applicable standard of review are discussed at length in the court's November, 1994, order and need not be repeated.

With each successive attempt to adequately plead their case, plaintiffs have submitted increasingly lengthy factual recitations and quotations from public documents relating to the Company, which do little to advance or clarify their claims. These claims can, however, be divided into two categories: (i) assertions that defendants made material misstatements in documents released to the public and the Securities and Exchange Commission ("SEC");[1] and (ii) assertions that Hancock

_____

[1] Specifically, plaintiffs claim that defendants made material misrepresentations concerning the Company's financial status (both present and projected) in the following five documents: the prospectus which was issued in connection with the August, 1993, stock offering; the October 28, 1993, annual report

Institutional Equity Services published a report (which defendants claim was the product of representations and "guidance" from the Company) that contained material misstatements of fact which the Company "endorsed" and "adopted" as its own, despite an alleged duty to correct such statements.

A.   <u>Alleged False Statements in Analyst's Report</u>.

This issue is fully and adequately discussed in the court's prior orders.  Plaintiffs' second amended complaint continues to be deficient in this area for the reasons previously articulated. Plaintiffs have attempted to cure those deficiencies by adding allegations that it was the Company's practice to have defendant Heilman:

> communicate regularly with securities analysts, . . . to discuss, among other things, the Company's earnings prospects, its products, the efficiency of the Company's manufacturing plants, anticipated financial performance, and to provide detailed "guidance" to these analysts with respect to the Company's business, including projected revenues, earnings, and of particular importance to analysts, earnings per share.

Second amended complaint, ¶34.  Importantly, however, plaintiffs have failed to identify or describe the statements allegedly made by Heilman to analysts that were materially false or misleading.

---

to shareholders; the November 1, 1993, annual report (form 10-K); the December 6, 1993, form 10-Q; and the March 15, 1994, form 10-Q.

4

Allegations that Heilman generally talked to analysts and analysts' reports were incorrect, even if proven, would not be sufficient to establish that Heilman (or someone else acting on the Company's behalf) made false statements in an effort to induce false reporting. See, e.g., Raab v. General Physics Corp., 4 F.3d 286, 288-89 (4th Cir. 1993) (plaintiff must allege facts which show that defendant exercised control over the analysts or sufficiently entangled itself with the analysts' forecasts to render those predictions attributable to it.). Accordingly, to the extent that plaintiffs have attempted to state causes of action against defendants for alleged false statements in reports generated by securities analysts, those claims are dismissed with prejudice.

B.    Alleged False Statements in Public Documents.

Essentially, plaintiffs assert that the Company made the following fraudulent representations (or omissions) in documents released to the public:

1.    The Company falsely stated that it would achieve increased profits by moving production from its plant in Seabrook, New Hampshire, to newly acquired factories in Michigan.  Complaint, ¶2.

5

2. The Company knowingly issued false predictions regarding future earnings prospects during pre-offering road shows. Complaint, ¶5.

3. When the Company made the public offering it knew but failed to disclose that its profitability would decline sharply because of a much less profitable mix of parts to be supplied to Ford. Complaint, ¶8.

4. The Company failed to disclose to the public "severe" problems it began experiencing at its Contour facility beginning in February, 1994 (i.e., 6 months after the first day of the public offering and after issuance of all but one of the public documents of which plaintiffs complain). Complaint, ¶13.

However, as discussed more fully below, the only substantive factual allegations which _arguably_ meet the specificity requirements Rule 9(b) relate to plaintiffs' claim that because its largest customer, Ford Motor Company, provided the Company with "26-week forecasts of production requirements," the Company necessarily knew of future reductions in sales of its products well in advance. Stretching that allegation, one might infer that when public statements regarding anticipated future earnings were made, defendants actually _knew_ that the Company's profits _would_ decrease, _if_ the operable 26-week forecast from Ford actually _established_ that the Company _would_ experience a significant decrease in gross sales revenue. Plaintiffs seem to claim it did and that despite such knowledge, defendants

6

nevertheless published statements which misrepresented the Company's likely future earnings, probable productivity, and ability to successfully address a shift in its product mix. Finding that these allegations meet the specificity requirements of Rule 9(b), however, would require the court to read far more into plaintiffs' complaint than is actually there.

As an example of defendants' alleged fraud, plaintiffs claim that the "Prospectus stated that [the Company] would become even more profitable as a result of lower operating costs at manufacturing facilities the Company had acquired." Complaint, para. 57 (emphasis added). In support of that fraud claim, plaintiffs then quote the allegedly offending provisions contained in the Prospectus. However, contrary to plaintiffs' exaggerated assertion, the cited provisions do not purport to guarantee that the Company's move to other manufacturing facilities would result in lower costs or higher profits. Instead, the statements made in the Prospectus are far more measured and reserved:

> The Company intends to transfer certain labor intensive operations from Seabrook to Hillsdale and Madison to take advantage of lower average labor costs and more fully utilize existing capacity.

7

Second amended complaint, para. 57 (quoting the Prospectus). As in earlier versions of their complaint, plaintiffs seek to hold the Company liable for failing to <u>anticipate</u> a drop in profits, without providing the requisite factual allegations to support a claim that the Company <u>knew</u> that its profits would fall yet, despite such knowledge, misled the public. Defendants make the point cogently and succinctly:

> Notably, all of the discussion in paragraph 62, which purports to say why the prospectus excerpts were false when made, is of events that occurred after -- long after -- publication of the prospectus. The short of it is that plaintiffs fault Bailey because Bailey did not accurately predict that "the transfer of production would result in a reduction of, not an increase in, the Company's profits." Comp. 62(c). Need it be said that if the Company could have predicted such a result, the transfer of production -- which had not occurred at the time of the prospectus -- would not have been attempted?

Defendants' memorandum, at 5.

Plaintiffs allege no facts which, if proven, would establish that the Company knew that the transfer of production would result in a substantial decrease in profits but, nevertheless, fraudulently asserted that it expected a favorable effect on its profit margin.

8

In response to the court's earlier concerns that they had failed to articulate why statements made by defendants were fraudulent when they were made (i.e., without the benefit of hindsight), plaintiffs claim that they have amended their previous complaints to state "the factual basis why the statements contained [earlier in the Complaint and attributed to defendants] were materially false and misleading." Plaintiffs' Memorandum at 12. So, for example, in paragraph 62(a) of the second amended complaint, plaintiffs allege that:

> Bailey's earnings would not continue to grow, they would decline materially due to a massive shift of Bailey's production to a much less profitable product mix. Defendants knew of, or recklessly ignored this shift, because of, among other things, information contained in Ford's 26-week Forecasts, the "predictable" lives of the products the Company manufactured, and communications with representatives of Ford. (emphasis added)

As before, however, plaintiffs have failed to allege facts to support these allegations of fraud. Plaintiffs fail, for example, to plead why defendants knew or should have known that the anticipated shift in product mix would cause profits to diminish. It simply does not follow that a shift in product mix necessarily apprised defendants that profitability would necessarily or even likely decline.

9

In paragraph 61 of the Complaint, plaintiffs quote the Company's Prospectus at length, which provides:

> Ford is redesigning the Taurus/Sable and Tempo/Topaz and the Company <u>does not expect</u> to supply components for the Taurus/Sable after the 1995 model year or for the Tempo/Topaz after the 1994 model year. . . . Although <u>vehicle build rates are inherently unpredictable</u>, based on the components it has been selected to manufacture <u>and its current estimates for build rates for these models, the Company believes</u> that these components <u>in the aggregate</u>, will provide the Company with <u>opportunities</u> <u>comparable</u> <u>to</u> those that have been provided by the Taurus/Sable and Tempo/Topaz models.

Complaint at para. 61 (quoting the Prospectus) (emphasis added). It is entirely possible that the disclosed shift in product mix could have lead to <u>increased</u> productivity and profitability, or about the same, or perhaps less if the "current estimates" were in error or if the "inherently unpredictable" build rates proved to be just that -- inherently unpredictable. Simply stated, plaintiffs have failed to allege facts which, if proven, would support their claim that the Company <u>knew</u> profitability would fall but, nevertheless, misled the public into believing that it would remain constant. Merely quoting these passages from the Prospectus and pointing to a subsequent decline in profitability is insufficient to state a claim for fraud. <u>See, e.g.</u>, <u>Lucia v. Prospect Street High Income Portfolio</u>, 36 F.3d 170, 174 (1st Cir.

10

1994) ("the complaint must set forth specific facts that make it reasonable to believe that defendants knew that a statement was materially false or misleading."); Serabian v. Amoskeag Bank Shares, 24 F.3d 357, 361 (1st Cir. 1994) ("defendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy, and optimistic predictions about the future that prove to be off the mark likewise are immunized unless plaintiffs meet their burden of demonstrating intentional deception."); Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's `knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false."); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991) ("The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party. . . . Where allegations of fraud are explicitly or, as in this case, implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief.").

In support of their claim that the second amended complaint meets the pleading requirements of Rule 9(b), plaintiffs' rely on a recent opinion by the Court of Appeals for the Ninth Circuit in <u>Fecht v. The Price Company</u>, ___ F.3d ___, 1995 WL 684555 (9th Cir. Nov. 20, 1995). This reliance is, however, misplaced. In that case, unlike this one, the court found that the plaintiffs had alleged facts which, if proved at trail, would support a finding that the defendant made material and false statements to the public. Specifically, the court noted that:

> The Complaint alleges that the positive statements about the expansion program were false when made <u>because</u>, in truth, the new stores <u>were losing money</u> and the program overall <u>was doing so poorly</u> that it would have to be curtailed or abandoned. Thus <u>plaintiffs allege facts</u> that reveal that the statements failed to reflect the Company's <u>true condition at the time the statements were made</u>. . . . More particularly, plaintiffs cite specific problems with the expansion program . . .

> In addition, the Complaint pleads facts that show that the decision to terminate the expansion program was made very shortly after the optimistic statements were made. . . . This shortness of time is circumstantial evidence that the optimistic statements were false when made.

<u>Id.</u> at *4-5 (emphasis added). Here, plaintiffs have failed to allege facts which, even if assumed to be true and capable of

12

being proved at trial, would support a claim that defendants knew their public statements were false when they were made.

As required by law, the Company plainly and unambiguously disclosed to the public the shift in product demand from Ford. It also clearly stated that "vehicle build rates are inherently unpredictable." Second amended complaint, at ¶61 (quoting the Prospectus). Nevertheless, plaintiffs seem to take issue with the Company's statement that, despite "unpredictable" vehicle build rates and a shift in product mix, it "believes that these components in the aggregate, will provide the Company with opportunities comparable to those that have been provided by the Taurus/Sable and Tempo/Topaz models." Again however, plaintiffs have pled no facts which, if proven, would support a claim that the Company's expressed belief that Ford's revised product demand presented comparable opportunities was knowingly false when the Company made that statement. The same is true with regard to plaintiffs' claims concerning the Company's statements about its relocation of production facilities.

**Conclusion**

13

Plaintiffs' allegations of securities fraud are serious ones. The law requires such allegations to be pled with specificity. Because counsel for plaintiffs appear to be experienced and knowledgeable securities litigators, the court is constrained to infer that counsel have pled all the facts they can, with all the specificity possible, in light of the information available to them. Having afforded plaintiffs three opportunities to state legally sufficient claims, and plaintiffs having failed to do so, the court hereby dismisses their second amended complaint and this action in its entirety, with prejudice. Defendants' motion to dismiss (document no. 23) is granted.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

December 29, 1995

cc:  Edward L. Hahn, Esq.
     Patrick K. Slyne, Esq.
     Sydelle Pittas, Esq.
     Michael C. Harvell, Esq.