**Michael LILLEY and Arthur Frederick, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

**v.**

**Stanley CHARREN, Maurice E. Miller, Joel M. Canino, Gerald R. Alderson, Charles Christenson, Angus M. Duthie, Steven N. Hutchinson, Howard W. Pifer, III, Mervin E. Werth, Kenetech Corporation, J.P. Morgan Securities, Inc., and Merrill Lynch & Co., Smith Barney, Inc., and Morgan Stanley & Co., Individually and on Behalf of A Defendant Underwriter Class, Defendants.**

No. C 95–3450 SI.

United States District Court, N.D.California.

Feb. 23, 1996.

Paul F. Bennett, Solomon B. Cera, George S. Trevor and Susan D. Resley, Gold Bennett & Cera LLP, San Francisco, CA, for Plaintiffs.

Michael A. Kahn, Samuel R. Miller, and Roger B. Mead, Folger & Levin, San Francisco, CA, William F. Alderman, Orrick, Herrington & Sutcliffe, San Francisco, CA, for Defendants.

## ORDER PARTIALLY GRANTING KENE-TECH AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS; DENYING MOTION TO STRIKE

ILLSTON, District Judge.

On February 9, 1996, the Court heard arguments on Kenetech defendants'[1] motion

1. Kenetech defendants are referred to collectively as "Kenetech" and include:
 Outside Directors—Stanley Charren, Charles Christenson, Angus M. Duthie, Steven N. Hutchinson, Mark J. Laskow, Haward W. Pifer, III, Mervin E. Werth;
 Officers—Maurice E. Miller, Joel M. Canino, Gerald R. Alderson, and Mervin E. Werth; and

to dismiss and motion to strike, and the Underwriter defendants'[2] motion to dismiss. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS Kenetech defendants' and the Underwriter defendants' motion to dismiss in part and DENIES defendants' motion to strike.

## BACKGROUND

Kenetech Corporation is a leading developer of wind energy technology. In order to fund the continued development, marketing, and commercial development of its 33M–VS Wind Turbine, Kenetech raised capital through a September 21, 1993, initial public offering (IPO) of 6,000,000 shares of its common stock. According to the IPO Prospectus, the 33M–VS Turbine was designed to generate electric power at a cost of $.05 per kilowatt hour (Kwh) or less, compared to a cost of $.07 to $.10 per Kwh from the previous generation of wind turbines. Additionally the IPO Prospectus represented that Kenetech had executed contracts to meet the future demand for the 33M–VS Turbines. In order to finance the continued development, manufacture and sale of the 33M–VS Turbines and the design, development and construction of windplants, on April 28, 1994, Kenetech undertook a public offering of 4,500,000 shares of convertible preferred stock.

On August 8, 1995, Kenetech announced that it would report a loss of $0.02 per share. Kenetech attributed most of its poor performance to its continuing difficulties in implementing its backlog of wind projects efficiently and cost effectively.

Plaintiffs filed this securities class action against Kenetech and certain present and former officers and directors and the under-

Kenetech Corp.

2. Defendants Merrill Lynch & Co., Morgan Stanley & Co. Inc., Smith Barney Inc. and J.P. Morgan Securities Inc. are referred to collectively as the "Underwriters."

writers of the public offerings. Plaintiffs allege that starting with the IPO of common stock and in the public offering of preferred stock and continuing throughout the class period,[3] defendants misrepresented, *inter alia,* Kenetech's progress on the development of the 33M–VS and the company's future prospects. Plaintiffs claim that these alleged false and misleading statements artificially inflated the price of Kenetech's securities for nearly two years. As a result, plaintiffs contend, when defendants finally revealed the true facts regarding Kenetech on August 8, 1995, the common stock completed its price decline from a class period high of $29½ per share to below $4 per share by November 1995. Similarly, the preferred stock declined from a class period high of $20⅞ to below $6 per share by November 1995. Plaintiffs assert violations of sections 11 and 15 of the Securities Act of 1933. Additionally, plaintiffs allege claims arising under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5.

The Kenetech defendants now move to dismiss pursuant to Rules 9(b) and 12(b)(6), F.R.Civ.P. The Underwriter defendants also move to dismiss the claims against them pursuant to Rules 9(b) and 12(b)(6). Finally, the Kenetech defendants seek to strike certain allegations from the complaint pursuant to Rule 12(f).

## LEGAL STANDARD

### I. *Motion to Dismiss*

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether he is entitled to offer evidence in support of his claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop his case at this stage of the proceedings. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

■ If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam)).

### II. *Motion to Strike*

■ Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). Motions to strike are regarded with disfavor as they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice. *Id.*

## DISCUSSION

### I. *Kenetech Defendants' Motion to Dismiss*

Kenetech defendants have moved to dismiss pursuant to Rules 9(b) and 12(b)(6) on six grounds: (1) that the "bespeaks caution" doctrine requires dismissal with prejudice of all claims in the complaint;[4] (2) that the statute of limitations bars plaintiffs' claims; (3) that the complaint fails to satisfy the particularity requirements of FRCP 9(b); (4) that plaintiff's section 11 claim fails to allege

---

3. The class period alleged starts with the initial public offering of Kenetech common stock on September 21, 1993, and ends on August 8, 1995.

4. "Complaint" refers to the First Amended Complaint filed November 2, 1995.

facts to show the required purchase of shares from the initial public offering; (5) that plaintiffs fail to allege claims under section 10(b) against individual Kenetech defendants; and (6) that plaintiffs fail to adequately allege that individual defendants had "control person status" which is required for claims under sections 15 and 20(a).

### A. Bespeaks Caution Doctrine

 Under the bespeaks caution doctrine, a court can rule as a matter of law that a defendant's forward-looking representations contained enough cautionary language or risk disclosures to protect the defendant against claims of securities fraud. *Fecht v. Price Co.,* 70 F.3d 1078, 1081 (9th Cir.1995); *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995) ("*WOW*"). A motion to dismiss for failure to state a claim will succeed under the bespeaks caution doctrine only where the documents containing defendants' challenged statements include enough cautionary language or risk disclosure that "reasonable minds" could not disagree that the challenged statements were not misleading. *Fecht,* 70 F.3d at 1082. Inclusion of some cautionary language is not enough to support a determination that, as a matter of law, defendants' statements were not misleading. *Id.* at 1082. Thus, the issue is whether there is enough cautionary language.

 Kenetech fails to satisfy the requirements of the bespeaks caution doctrine. First, many of the alleged misleading statements are not forward-looking statements[5] and thus are not protected by the doctrine. For example, many of the challenged statements pertain to the fact that the 33M–VS turbine "can generate pollution-free electricity at a price competitive with newly constructed fossil fuel plants." (Compl. ¶ 110). This is not a forward-looking statement but a statement of a current fact which the bespeaks caution doctrine does not protect.

Second, the bespeaks caution doctrine applies only where the documents containing

defendants' challenged statements include enough cautionary language or risk disclosure that "reasonable minds" could not disagree that the challenged statements were not misleading. *Fecht,* 70 F.3d at 1082. Many of the alleged misleading statements were made to the press without any cautionary language or risk disclosures.[6] Thus, the bespeaks caution doctrine cannot protect these statements.

Finally, as to Kenetech's forward-looking representations there must be enough cautionary language so that "reasonable minds" could not disagree that the challenged statements were not misleading. *Id.* While Kenetech's IPO Prospectus, Preferred Stock Prospectus, and 1993 10–K all contain some cautionary language, there is not enough cautionary language for this Court to decide as a matter of law that reasonable minds could not disagree that the challenged statements were not misleading. *Id.* Thus, Kenetech fails to satisfy the bespeaks caution doctrine and its motion to dismiss on this grounds is DENIED.

### B. Statute of Limitations

 Section 11 and 10(b) claims must both be brought within one year of the date on which plaintiff discovered, or should have discovered, the facts constituting the alleged fraud. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). It may be decided as a matter of law when the plaintiff discovered the alleged wrongdoing only when uncontroverted evidence irrefutably demonstrates that plaintiff discovered or should have discovered the fraudulent conduct. *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 877 (9th Cir.1984) (citing *Kramas v. Security Gas & Oil Inc.,* 672 F.2d 766, 770 (9th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982)). Otherwise, when a plaintiff discovered or should have discovered the alleged fraud is a question of fact. *Id.* Plaintiffs filed the original complaint on September 28, 1995. Thus, plaintiffs' claims are barred if they had

---

5. *See, e.g.,* Compl. ¶¶ 78, 98, 100 (first two sentences), 102, 110, 112, 115, 122.

6. *See, e.g.,* Compl., ¶¶ 80, 98, 100, 106, 108, 110, 115, 122.

discovered or should have discovered the fraud any earlier than September 28, 1994. Plaintiffs assert that they had no notice before August 8, 1995, when Kenetech announced its problems, and that they thus filed well within the statute of limitations.

■ Kenetech argues that plaintiffs had notice prior to this date and are time barred from filing suit. Kenetech asserts that a newspaper article and analysts' reports discussing Kenetech's problems with producing the wind turbines, as well as Kenetech's significant stock slide, all prior to September 15, 1994, put investors on notice.

However, a decline in the price of Kenetech's stock, standing alone, is not evidence of fraud. *Mosesian*, 727 F.2d at 878. Moreover, the article and reports include optimistic statements from Kenetech that refute the problems discussed. Thus, it is not clear as a matter of law that investors should have questioned the truthfulness of Kenetech's statements prior to August 8, 1995, when Kenetech announced its difficulty in producing the wind turbines. The triers of fact could, therefore, reach differing conclusions. Accordingly, Kenetech's motion to dismiss on the basis that plaintiffs' claims are barred by the statute of limitations is DENIED.

### C. *Particularity Requirements of Rule 9(b)*

■ In paragraphs incorporated in both the section 11 and Rule 10b–5 claims, plaintiffs allege that Kenetech used securities analysts to "feed" false information to the investing public. "Allegations based on this theory of liability must legally support a conclusion that the company adopted, endorsed or sufficiently entangled itself with the forecasts to render them attributable to [it]." *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1097 (N.D.Cal.1994) (citing *In re Caere Corp. Se. Litig.*, 837 F.Supp. 1054, 1059 (N.D.Cal.1993). Rule 9(b) requires a plaintiff who alleges a corporation's responsibility for analysts' statements to (1) identify specific forecasts and name the corporate

official who adopted them; (2) point to the specific interactions between the corporate official and the analyst which gave rise the entanglement; and (3) state the dates on which the acts which allegedly gave rise to the entanglement occurred. *Id.; see also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994)).

■ Plaintiffs' allegations fail to satisfy these requirements. First, plaintiffs have failed to specify any analysts' report that was allegedly misleading. Second, plaintiffs have not alleged entanglement with the particularity required. Alleging that defendants provided the analysts with the information on which their reports were based is not sufficient. A one-way flow of information from the defendants to the analysts fails to allege entanglement as a matter of law. *See In re Syntex*, 855 F.Supp at 1097. Moreover, plaintiffs have not alleged any specific acts of entanglement by defendants. Finally, plaintiffs have not identified with sufficient particularity any fraudulent statements made by any particular defendant to any particular analyst. Thus, plaintiffs' claims regarding defendants disseminating false information to analysts are hereby STRICKEN WITH LEAVE TO AMEND.[7]

### D. *Standing for Section 11 Claim*

■ Standing for a section 11 claim requires plaintiffs to plead and prove that they purchased shares "either (1) directly in the public offering for which the misleading registration statement was filed or (2) traceable to that public offering." *Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp 1437, 1439 (N.D.Cal.1990); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 642 (N.D.Cal.1980) (motion to dismiss section 11 claim because allegations that stock might have been issued pursuant to a registration statement are insufficient).

■ Plaintiffs have alleged that the representative plaintiffs and the absent mem-

---

**7.** Defendants' motion seeks dismissal of the "claims based on analysts' report." (Kenetech Memo, p. 18) However, while the allegations concerning analysts' reports are included in both causes of action, neither claim depends exclusively on them. Hence dismissal, even with leave to amend, is unwarranted on these grounds.

bers of the alleged class bought stock pursuant to Kenetech's IPO and preferred stock offering. (Compl. ¶ 135). In Kenetech's motion to dismiss, it argues that these allegations, which do not include the date of the representatives' purchases, are insufficient because the market eventually contained shares not issued pursuant to the prospectuses. Kenetech also asserts that plaintiffs cannot trace their purchases of common stock to the IPO, because 80,000 unregistered shares of common stock entered the market prior to the named plaintiffs' initial purchases. Kenetech argues that these shares "polluted" the market and, as a matter of law, plaintiffs are thus unable to establish that they purchased shares pursuant to the public offering.[8]

As to the purported 80,000 unregistered shares, the only evidence before the Court is the declaration of Kenetech's Secretary reflecting her belief that the shares were sold. Assuming that the 80,000 unregistered shares were sold, plaintiffs may still be able to establish standing for a section 11 claim if, for example, they can identify the purchasers of the unregistered shares.

However, given the fact that the market eventually contained shares that were not issued pursuant to the prospectuses, it does appear that plaintiffs must amend their pleadings to allege the specific dates and facts that establish the representative plaintiffs' standing for a section 11 claim. Thus, plaintiffs' section 11 claim is hereby DISMISSED WITH LEAVE TO AMEND.

### E. Section 10(b) Claims Against Individual Defendants

 Kenetech argues that, except as to its former CEO Gerald Alderson, plaintiffs have only pled secondary liability under section 10(b) against the other officer and director defendants named in the complaint. Kenetech asserts that none of the allegedly misleading statements can be attributed to any individual defendant other than Alderson and that plaintiffs' reliance on the "group pleading" doctrine fails.

A plaintiff may satisfy FRCP 9(b) through reliance upon a presumption that allegedly misleading group-published information is the collective action of officers and inside directors of the corporation in question. In re GlenFed, Inc., 60 F.3d 591, 593 (9th Cir. 1995). Thus, as to the individual defendant officers the group-pleading doctrine applies. Accordingly, Kenetech's motion to dismiss plaintiffs' section 10(b) claim as to individual officer defendants Joel M. Canino, Maurice E. Miller, and Mervin E. Werth is hereby DENIED.

 However, as to outside directors, plaintiffs' complaint must contain allegations that the outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times. Id. (citations omitted). Plaintiffs fail to allege such operational involvement on the part of individual outside director defendants. Thus, plaintiffs have not satisfied the prerequisites for group pleading and their section 10(b) claims against individual defendants Stanley Charren, Charles Christenson, Angus M. Duthie, Steven N. Hutchinson, Mark J. Laskow, and Howard W. Pifer, III are hereby DISMISSED WITH LEAVE TO AMEND.

### F. Sections 15 and 20(a) Claims as to Individual Defendants

 Kenetech argues that the plaintiffs have failed to state a claim under section 15 of the Securities Act and section 20 of the Exchange Act. Plaintiffs have alleged that the individual defendants controlled Kenetech and are responsible for the primary violations of Kenetech under section 11 of the Securities Act and section 10(b) of the Exchange Act. To state a cause of action for "controlling person" liability under either section 15 or section 20, plaintiffs must allege facts showing that each defendant possessed the actual power to control the person primarily liable. Conclusory allegations based on director or officer status are insufficient as a matter of law. See Arthur Children's

8. On this point, it appears that defendants' arguments are directed specifically to the claims of the representative plaintiffs, and not to the absent members of the alleged class.

*Trust v. Keim,* 994 F.2d 1390, 1396–97 (9th Cir.1993) (noting that a person's status as an officer or director does not create a presumption of control); *In re Gupta Corp. Sec. Litig.,* 900 F.Supp. 1217, 1242 (N.D.Cal.1994) (status alone is insufficient to establish controlling person liability; plaintiffs must allege facts demonstrating actual power or influence).

■■■■ Here, all of plaintiffs' allegations regarding controlling person status are conclusory assertions based on defendants' positions in the company. In *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1441 (9th Cir.1987) the court held that where:

> the corporate officers are a narrowly defined group charged with the day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violations.

Thus, status alone may be sufficient when plaintiffs limit their fraud allegations to a narrowly-defined group of corporate officers. However, it is insufficient where plaintiffs rely on the status of outside directors as well. Therefore, plaintiffs fail to state a claim under sections 15 and 20(a) against the outside-director defendants: Stanley Charren, Charles Christenson, Angus M. Duthie, Steven N. Hutchinson, Mark J. Laskow, and Howard W. Pifer, III and the claims are hereby DISMISSED WITH LEAVE TO AMEND. As to the officer defendants who are involved in the day-to-day management, the plaintiffs' allegations are sufficient and Kenetech's motion to dismiss the claims under section 15 and 20(a) as to Joel M. Canino, Maurice E. Miller, and Mervin E. Werth is hereby DENIED.

## II. *Underwriter Defendants' Motion to Dismiss*

The Underwriter defendants have filed a motion to dismiss pursuant to Rules 9(b) and 12(b)(6). The Underwriters contend that the plaintiffs have failed to allege fraud with the requisite particularity and to state any claim against the Underwriters.

## A. *Non–Prospectus Statements*

■■■ The Underwriters argue that the plaintiffs fail to allege any connection between the Underwriters and any non-prospectus statements that they allege are fraudulent. Plaintiffs counter this position by citing to a Morgan Stanley research report. However, this report was not mentioned in the complaint and was issued after both representative plaintiffs bought Kenetech stock. Thus, it fails to provide the required connection. Moreover, while plaintiffs cite to cases which establish that anyone intricately involved in creating a false public statement can be liable under Rule 10b–5, this does not relieve their burden of pleading facts that show such involvement. Plaintiffs have failed to allege such facts. Thus, plaintiffs' claims against the Underwriters regarding any non-prospectus statements are hereby DISMISSED WITH LEAVE TO AMEND.

## B. *Prospectus Statements*

■■■ The Underwriters argue, as does Kenetech, that alleged misleading statements found in both the IPO prospectus and the preferred stock prospectus are protected by the risk disclosures found in each document under the bespeaks caution doctrine. For the same reasons as set forth in the discussion regarding Kenetech's bespeaks caution argument, the Underwriters have failed to show as a matter of law that the challenged statements are not misleading.

The Underwriters also contend that the plaintiffs' allegations as to why certain statements are false and misleading fail to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). The Underwriters argue that, under *In re GlenFed Sec. Litig.,* 42 F.3d 1541 (9th Cir.1991), plaintiffs cannot simply allege that the challenged statements are misleading without alleging what was fraudulent about each statement at the time it was made.

In a motion to dismiss plaintiffs' allegations are assumed to be true. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Plaintiffs allege that the turbine was not able to produce electrical power at a cost of $.05 per Kwh at any time during the class

period. This allegation alone sufficiently states why the alleged misrepresentations pertaining to the wind turbine's ability to produce power at a cost less than $.05 were not true. The Ninth Circuit reached a similar conclusion in *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir.1996). In *Warshaw* the court applied the particularity requirements of *GlenFed* to a complaint that alleged that the "defendants knew that the facts contravened their 'optimistic' statements," and found that such an allegation was sufficient for Rule 9(b). *Id.*

Moreover, "in a securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Id.* (citing *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994)). Plaintiffs' allegations identify the circumstances of the alleged fraud sufficiently and from such allegations defendants are able to answer the complaint.

#### C. *Loss Causation*

The Underwriters assert that plaintiffs' allegations fail to satisfy the loss causation requirement of Rule 10b–5, i.e., that they have insufficiently alleged a causal connection between defendants' misrepresentations or omissions and plaintiffs' injury. *See Securities Investor Protection Corp. v. Vigman*, 908 F.2d 1461, 1468 (9th Cir.1990), *rev'd on other grounds*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ("What securities lawyers call 'loss causation' is the standard common law fraud rule of 'proximate causation.'") Loss causation in a Rule 10b–5 claim requires that "the misrepresentation touch[ ] upon the reasons for the investment's decline in value." *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir.1992), *cert. denied*, 506 U.S. 948, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992) (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L. ed.2d 548 (1983)).

Plaintiffs allege that as a result of false and misleading statements Kenetech securities were artificially inflated in price for two years (Compl. ¶ 2), and include other allegations relating to causation throughout the complaint (¶¶ 25, 30, 146, 147). At this preliminary pleading stage, these allegations are sufficient.[9]

#### D. *Standing for Section 11 Claim*

The Underwriters argue that defendants have failed to meet the "tracing" requirements of Section 11. Plaintiffs have alleged that they purchased Kenetech common stock issued pursuant to the IPO Prospectus and that plaintiff Frederick purchased preferred stock pursuant to the preferred stock prospectus. For the reasons set forth in the discussion of Kenetech's Motion to Dismiss, plaintiffs need to allege the dates and establish that they purchased stock pursuant to the offering to satisfy the standing requirement for a section 11 claim. Thus, plaintiffs' section 11 claim is hereby DISMISSED WITH LEAVE TO AMEND.

### III. *Motion to Strike*

Kenetech seeks to have plaintiffs' allegations regarding stock sales by defendants Stanley Charren (Compl. ¶ 11), Joel M. Canino (Compl ¶ 12), and Gerald R. Alderson (Compl. ¶ 10) stricken from the complaint. Kenetech contends that the allegations were included in the complaint solely to cast the particular defendants in a bad light, and that they are not probative of scienter, motive, or any element relevant to the case.

Plaintiffs assert that the defendants' stock sales are both material and pertinent to the complaint. Plaintiffs allege that defendants' stock sales occurred shortly after one of Kenetech's positive announcements or prior to a negative announcement about the Company's 1994 audited financial results and therefore defendants benefitted personally through their timely sales. Thus, plaintiffs contend, the suspicious timing of the sales is probative of the defendants' scienter. *See Kaplan v.*

---

9. The Underwriters also complain that plaintiffs have not separated the losses attributed to statements in the prospectuses from losses attributed to statements made outside the prospectuses. Such matters will be subject of proof for later stages of this case, but are not pleading deficiencies requiring dismissal.

 

*Rose,* 49 F.3d 1363, 1379–80 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995) (motion for summary judgment denied as insider stock sales give rise to inference of scienter).

Kenetech counters that the timing of the sales is not suspicious because the sales were made pursuant to a Kenetech policy that limits when insiders can make stock sales. Kenetech also asserts that the amount of the sales is not suspicious because the three defendants sold only small portions of their shares.

However, for a motion to dismiss this Court only need determine whether the allegations are material or have any bearing on the subject matter of the litigation. *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). Given that the defendants' stock sales might be probative of the defendants' scienter the allegations do have some bearing on the subject matter of the litigation, thus, Kenetech's motion to strike is hereby DENIED.

## CONCLUSION

For the foregoing reasons:

1. Kenetech's and the Underwriters' motions to dismiss are DENIED in part and GRANTED in part. The following claims are DISMISSED WITH LEAVE TO AMEND:

(a) plaintiffs' section 11 claim against Kenetech and the Underwriters;

(b) plaintiffs' section 10(b) claim against the outside director defendants Stanley Charren, Charles Christenson, Angus M. Duthie, Steven N. Hutchinson, Mark J. Laskow, and Howard W. Pifer, III;

(c) plaintiffs' claims under sections 15 and 20(a) against outside director defendants Stanley Charren, Charles Christenson, Angus M. Duthie, Steven N. Hutchinson, Mark J. Laskow, and Howard W. Pifer, III; and

(d) all claims based on any non-prospectus statements against the Underwriters.

2. Plaintiffs' allegations that defendants used securities analysts to feed false information to the public are STRICKEN WITH LEAVE TO AMEND.

3. In all other respects, the motions to dismiss and to strike are DENIED.

IT IS SO ORDERED.