**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LIVID HOLDINGS LTD,
      *Plaintiff-Appellant,*

v.

SALOMON SMITH BARNEY, INC.;
SALOMON SMITH BARNEY HOLDINGS
INC.; BNY CLEARING SERVICES
LLC, Successor in interest to
Schroders & Co, Inc.; ANDREW
VAN DER VORD; ROBERT CHAMINE;
MICHAEL DURA; ROBERT HAMECS;
WILLIAM HURST; LEON KALVARIA;
ILAN KAUFTHAL; JOHN O'DONOGUE;
HERC SEGALAS; JED SHERWINDT;
JAMES STONE; FREDERICK TAYLOR;
SAMUEL WEINHOFF,
      *Defendants-Appellees.*

No. 03-35374

D.C. No.
CV-02-01607-JCC

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief Judge, Presiding

Argued and Submitted
October 5, 2004—Seattle, Washington

Filed April 6, 2005
Amended August 2, 2005

Before: Dorothy W. Nelson, Stephen Reinhardt, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge D.W. Nelson

8855

## COUNSEL

Marc M. Seltzer (argued), Susman Godfrey, LLP, Los Angeles, California, and Paula K. Jacobi (on the briefs), Sugar, Friedberg & Felsenthal, LLP, Chicago, Illinois, for the plaintiff-appellant.

William F. Alderman, Orrick, Herrington & Sutcliffe, LLP, San Francisco, California, for the defendants-appellees.

## ORDER

The opinion filed on April 6, 2005, and published at 403 F.3d 1050, is AMENDED as follows.

403 F.3d at 1054, Col. 1, Ln. 17:

At the end of the first ¶ on this page add: "In addition, Livid also alleges that the Defendants' purchase of PCI stock was dependent on the occurrence of future events and that the Defendants knew that UAE was not contractually bound to purchase its share of the PCI stock."

403 F.3d at 1054, Col. 2, Ln. 8-13:

Replace the sentence beginning "Livid further alleges that all of the . . ." with the following sentences: "From the pleadings, it is not clear whether the Defendants bought preferred shares of PCI stock, as UAE did, or whether they bought common shares of the stock. Even assuming *arguendo* that the Defendants bought common shares, this difference is of no import. Livid alleges that each of the Defendants bought stock on the same conditional terms as UAE, and therefore knew that the sale was incomplete when the notice was attached to the Memorandum for the express purpose of attracting additional investors." On Line 17, delete the sentence: "Defendants do not contest that they had such knowledge." as this case is before us on a Rule 12(b)(6) motion and the Defendants have not answered the complaint.

403 F.3d at 1056, Col. 1, Ln. 11:

After "Memorandum" and before the period insert "and its accompanying notice."

403 F.3d at 1057, Col. 1, Ln. 41:

Replace "Defendants, who purchased PCI stock on the same terms as UAE, do not contest that they" with "Livid alleges that the Defendants, who purchased PCI stock on the same terms as UAE,"

403 F.3d at 1057, Col. 2, Ln. 34:

Delete ", and Defendants do not contest,"

403 F.3d at 1057, Col. 2, Ln. 35:

Replace "they" with "the Defendants"

403 F.3d at 1058, Col. 1, Ln. 26-30:

> Replace "and that the Defendants' misrepresentation induced a disparity between the transaction price and the true investment quality of the stock at the time of the transaction. *See id.* at 938-39." with "and that the Defendants' misrepresentation was directly related to the actual economic loss it suffered. *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir. 1992).[1] Defendants' misrepresentation concealed PCI's financial situation. As a result of its dire financial situation, PCI eventually went bankrupt, which caused Livid to lose the entire value of its investment in PCI. *See, e.g., Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.*, 343 F.3d 189, 198-99 (2d Cir. 2003) (holding that sufficient evidence of loss causation exists when the "content of the alleged misstatements or omissions," caused the financial "harm actually suffered" by the plaintiffs (internal quotation marks omitted) (citing and quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001)))."

403 F.3d at 1058, Col. 1, Ln. 30-31:

> Delete "Our case law requires no more."

403 F.3d at 1058, Col. 2, Ln. 14:

---

[1]Although the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1633-34 (2005) makes clear that in fraud-on-the-market cases involving publicly traded stocks, plaintiffs cannot plead loss causation simply by asserting that they purchased the security at issue at an artificially inflated price, the Court refused to consider "other proximate cause or loss-related questions." Here, at issue is a private sale of privately traded stock and Livid not only asserted that it purchased the security at issue at an artificially inflated price, but pled that the Defendants' misrepresentation was causally related to the loss it sustained. Under these circumstances, *Dura* is not controlling.

Delete "the Defendants do not contest" and insert "it appears" before "that Livid"

With these amendments, the panel has voted to deny the petition for rehearing. Judge Reinhardt and Judge Thomas have voted to deny the petition for rehearing en banc. Judge D. Nelson recommended denial of the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it.

The petition for rehearing and petition for rehearing en banc are DENIED.No further petitions for rehearing or petitions for rehearing en banc may be filed.

**IT IS SO ORDERED.**

---

## OPINION

D.W. NELSON, Circuit Judge:

Livid Holdings, Ltd. ("Livid") appeals the district court's dismissal with prejudice of its complaint against the corporate successors to Schroders & Co., Inc. (collectively referred to as "Schroders" or "Defendants") under Federal Rule of Civil Procedure 12(b)(6). Livid's complaint alleges that Defendants violated: (1) §10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder; (2) the Washington Securities Act ("WSA"), Wash. Rev. Code § 21.20.010; and (3) Washington tort law. We hold that the district court erred in dismissing Livid's complaint.

### FACTS AND PROCEEDINGS BELOW

Livid's claims arise out of its December 1999 purchase of $10 million worth of shares in Purely Cotton, Inc. ("PCI")

stock. In January 1999, Schroders helped PCI arrange a private placement of $25 million worth of its stock. For this purpose, Schroders created a Confidential Offering Memorandum ("the Memorandum"), which outlined PCI's operations, business plan, and financial position. After the distribution of the Memorandum to potential investors, Livid alleges that UAE, a Gibralter-based company, agreed to purchase over 98% of the offering. The individual Defendants, who were directors and/or officers of Schroders, agreed to purchase the remaining stock. Livid alleges that there was never a contractual document requiring UAE to pay more than $2 million of the $25 million purchase price. In addition, Livid also alleges that the Defendants' purchase of PCI stock was dependent on the occurrence of future events and that the Defendants knew that UAE was not contractually bound to purchase its share of the PCI stock.

In September 1999, PCI asked Schroders for additional copies of the Memorandum in order to solicit additional investors. Livid alleges that before providing PCI with these extra copies, Defendant Van der Vord, the managing director at Schroders in charge of the offering, and his team amended the Memorandum by attaching the following notice:

> This Memorandum was written in January 1999 and represents the original Offering Memorandum distributed to potential investors in the Company's $25 million private equity fund raising. Subsequent to the writing and distribution of this document the Company may have undergone various changes including but not limited to management changes, ownership changes and business strategy changes. *This document has not been updated or amended to reflect any events that have occurred since January 1999. As such, it does not reflect the fact that the above-mentioned $25 million private equity fund raising has been completed.*

(emphasis added).

Livid's claims against Defendants arise out of the last sentence of this notice. This sentence, Livid contends, implies that the proceeds of the initial $25 million sale had been received by PCI, but that the Memorandum had not yet been updated to reflect this additional capital. At the time this notice was written, however, UAE and the Defendants had actually paid less than $2 million to PCI. Livid alleges that additional payments on UAE's balance were conditional on UAE's approval of a PCI business plan and a new chief executive officer — meaning that UAE was not actually bound to pay for the PCI stock. From the pleadings, it is not clear whether the Defendants bought preferred shares of PCI stock, as UAE did, or whether they bought common shares of the stock. Even assuming *arguendo* that the Defendants bought common shares, this difference is of no import. Livid alleges that each of the Defendants bought stock on the same conditional terms as UAE, and therefore knew that the sale was incomplete when the notice was attached to the Memorandum for the express purpose of attracting additional investors. In addition, Livid alleges that Defendants had a motive to deceive potential investors because PCI had not yet paid Schroders for the services it provided in connection with the first fund-raising campaign. In essence, Livid contends that Defendants had a motive to try to bring additional capital into PCI — to increase the likelihood that it would be paid for past services rendered.

The district court dismissed each of Livid's claims with prejudice. With respect to the federal claim, the district court found that Livid failed to plead adequately that the notice statement was a material misrepresentation, upon which it reasonably relied in purchasing PCI stock. In addition, the district court found that Livid's complaint did not satisfy the heightened pleading standards for scienter under the 1995 Private Securities Litigation Reform Act ("PSLRA"). The district court dismissed Livid's state securities claim because it

found the alleged misrepresentation immaterial, and that Defendants were not sellers of securities within the meaning of the WSA. Because the district court found that Livid's reliance on the representations in the notice was unreasonable, the court also dismissed the state tort claims. Finally, the district court refused to grant Livid leave to amend its complaint, concluding that any such attempt would be futile.

## DISCUSSION

### I. Standard of Review

We review dismissals for failure to state a claim pursuant to Federal Rule 12(b)(6) de novo. *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). In conducting such a review, we generally limit consideration to the complaint and construe all allegations of material fact in the light most favorable to the nonmoving party. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir.), *cert. denied*, 540 U.S. 966 (2003). A Federal Rule 12(b)(6) dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling plaintiff to relief. *No. 84 Employer-Teamster Joint Council*, 320 F.3d at 931. The district court's dismissal of a complaint without leave to amend is reviewed de novo and is improper unless it is clear that the complaint could not be saved by any amendment. *Thinket Ink Infor. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

### II. Federal Securities Law Claim

**[1]** Section 10(b) of the 1934 Act makes it unlawful "for any person, directly or indirectly, . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may pre-

scribe." 15 U.S.C. §§ 78j, 78j(b). Rule 10b-5, promulgated under § 10(b), in turn provides: "It shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. The elements of a Rule 10b-5 claim are: (1) a misrepresentation or omission of a material fact; (2) scienter; (3) causation; (4) reliance; and (5) damages. *In re Daou Systems, Inc. Sec. Litig.*, 397 F.3d 704, 710 (9th Cir. 2005).

Claims brought under Rule 10b-5 must meet the particularity requirement of Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The PSLRA raised the pleading standards for Rule 10b-5 claims by requiring that plaintiffs plead scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (1997).

## A.    *Material Misrepresentations or Omissions*

**[2]** For the purposes of a 10b-5 claim, a misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988). We conclude that Livid has sufficiently pled materiality by raising a substantial likelihood that a reasonable investor would not have purchased $10 million worth of PCI stock after learning that the company had $25 million less in cash than it was led to believe. If this misrepresentation had not been made, Livid would likely have believed that PCI's financial status was closer to the negative net worth of $743,646 reported in the Memorandum, rather than $24.2 million predicted to result from the stock offering.[1] This misrepresenta-

---

[1]This amount reflects the $25 million in income from the offering less expenses from the sale.

tion radically altered the picture of PCI's overall economic health and viability presented to Livid by the Memorandum and its accompanying notice. Thus, Livid successfully pled the materiality of Defendants' misrepresentation regarding PCI's capital.

[3] The district court, however, found that the notice Defendants attached to the Memorandum contained cautionary language rendering "any statement made in the [n]otice legally immaterial." In making this finding, the district court relied on the bespeaks caution doctrine, which "provides a mechanism by which a court can rule as a matter of law that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996) (quoting *Fecht v. The Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)). We have applied the bespeaks caution doctrine in situations where "optimistic projections coupled with cautionary language . . . affect[ ] the reasonableness of reliance on and the materiality of those projections." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1414 (9th Cir. 1994).

[4] Dismissal on the pleadings under the bespeaks caution doctrine, however, requires a stringent showing: There must be sufficient "cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading." *In re Stac*, 89 F.3d at 1409 (quoting *Fecht*, 70 F.3d at 1082). We cannot agree that the only reasonable interpretation of the contested sentence is that it warned potential investors that PCI may not have received all of the capital from the $25 million stock sale. Instead, the most obvious interpretation of this sentence is that this cash had already been received, but that this "fact" and the resulting cash increase was not yet updated in the Memorandum.

[5] In finding the statement immaterial, the district court also extended the bespeaks caution doctrine to statements of

fact, despite the lack of approval from this circuit for such application of the doctrine as well as the explicit rejection of such an extension by two other circuits. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996) (holding that the bespeaks caution doctrine does not apply to representations of "present facts" that were false when made); *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1405-06 (7th Cir. 1995) (similarly holding that the doctrine does not apply to misrepresentations of "hard facts," but only to subjective or "soft information"). To date, this circuit has only applied the doctrine to forward-looking statements, such as estimates of future performance or economic projections. *See Gray v. First Winthrop Corp.*, 82 F.3d 877, 883 (9th Cir. 1996) (acknowledging that "the bespeaks caution rule is not applicable to misrepresentations of historical facts," but refusing to find that a district court clearly erred when considering the doctrine when the contested historical facts formed the basis of projections about future profitability); *see also* PSLRA § 21E(c)(2), 15 U.S.C. § 78u-5(c)(1) (expressly codifying the bespeaks caution doctrine for "forward-looking statements"). We now expressly adopt the logic of the First and Seventh Circuits and hold that extension of the bespeaks caution doctrine to statements of historical fact is inappropriate. *See also Worlds of Wonder*, 35 F.3d at 1414 ("[A]n overbroad application of the [bespeaks caution] doctrine would encourage management to conceal deliberate misrepresentations beneath the mantle of broad cautionary language.") (quoting *In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850, 858 (N.D. Cal. 1993)). Accordingly, we hold that the district court erred in concluding that the contested statement was immaterial.

## B. Scienter

**[6]** This circuit has interpreted the PSLRA's heightened pleading standard as requiring plaintiff to "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).

"[T]o show a strong inference of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity [to commit fraud]." *Id*. When determining whether plaintiffs have sufficiently plead scienter, we must consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." *No. 84 Employer-Teamster Joint Council*, 320 F.3d at 938 (citation omitted). In making this assessment, we consider all reasonable inferences, whether or not favorable to the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

Livid alleges that the Defendants, who purchased PCI stock on the same terms as UAE, were fully aware that the initial stock sale had not been completed. Nonetheless, Defendants wrote and attached the notice statement, which at best omitted crucial information about the prior sale's terms and status, and at worst was an intentional attempt to trick potential investors into believing that the sale had been completed and the cash had been received by PCI but was simply not incorporated into the previously written Memorandum. The district court, however, believed that the Defendants lacked the requisite mental state because "if [they] had intended to mislead investors, [they] would have made the misrepresentation more explicit." We disagree. There are few ways to make the misrepresentation more explicit as it states as "fact" that the initial stock offering "has been completed," but that the attached Memorandum had not been updated to reflect this alleged fact. If Defendants' intention was to warn potential investors that the Memorandum was not current and to make no statement on whether or not the sale was successfully concluded, the Defendants could have conveyed this warning in a much clearer way. For example, had the sentence read: "The document does not reflect any capital that may have been generated by the private equity fund-raising," it would not imply that the $25 million fund-raising effort had been successfully

completed and that PCI had received these funds, but the Memorandum did not yet reflect this fact.

**[7]** Because Livid alleges that the Defendants knew the contested statement's most obvious interpretation was false when made, Livid has met the heightened pleading standard for scienter by raising a strong inference of defendants' deliberate recklessness. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). In combination with Livid's allegation that Defendants had a motive to misrepresent the status of the stock sale, Livid has pled facts constituting a strong inference of scienter. Although this court has found that allegations of a motive to mislead, standing alone, cannot satisfy the heightened scienter standard, we are not precluded from considering allegations of motive in combination with other allegations of Defendants' intent to mislead or deliberate recklessness. *In re Silicon Graphics*, 183 F.3d at 974. Therefore, we hold that the totality of the allegations creates a strong inference that the Defendants acted with the requisite scienter and reverse the district court's conclusion to the contrary.

## C.  Causation

**[8]** The causation requirement for Rule 10b-5 actions includes "both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentation or omissions caused the harm." *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). Livid has sufficiently pled both elements of causation because it has alleged both that they would not have purchased the PCI stock but for the misrepresentation and that the Defendants' misrepresentation was directly related to the actual economic loss it suffered. *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir. 1992).[2] Defendants' misrepresentation

---

[2]Although the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1633-34 (2005) makes clear that in fraud-on-

concealed PCI's financial situation. As a result of its dire financial situation, PCI eventually went bankrupt, which caused Livid to lose the entire value of its investment in PCI. *See, e.g., Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.*, 343 F.3d 189, 198-99 (2d Cir. 2003) (holding that sufficient evidence of loss causation exists when the "content of the alleged misstatements or omissions," caused the financial "harm actually suffered" by the plaintiffs (internal quotation marks omitted) (citing and quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001))). Accordingly, Livid pled causation sufficient to survive a Rule 12(b)(6) motion to dismiss.

## D.   Reliance and Damages

**[9]** The district court concluded, as a matter of law, that Livid could not establish reliance because the notice contained sufficient cautionary language to make any reliance unreasonable. For the reasons discussed above, we refuse to extend the bespeaks caution doctrine to misrepresentations of historical facts as opposed to forward-looking projections. Therefore, we reverse the district court's finding that Livid inadequately plead reliance.

Finally, although the district court claims to have made its reliance finding as a matter of law, it stated that even if the Defendants could have expected potential investors to "draw such a faulty inference" that the initial stock offering had been completed, that Defendants "would have had to assume further that the same investors would fail to perform even the

the-market cases involving publicly traded stocks, plaintiffs cannot plead loss causation simply by asserting that they purchased the security at issue at an artificially inflated price, the Court refused to consider "other proximate cause or loss-related questions." Here, at issue is a private sale of privately traded stock and Livid not only asserted that it purchased the security at issue at an artificially inflated price, but pled that the Defendants' misrepresentation was causally related to the loss it sustained. Under these circumstances, *Dura* is not controlling.

most cursory due diligence," which would have quickly revealed the truth. Such a factual determination by the court is inappropriate in a Rule 12(b)(6) dismissal, especially when, as here, it appears that Livid conducted adequate due diligence, which produced statements from UAE and PCI falsely claiming that the sale had been completed. If Livid justifiably relied on Defendants' misrepresentation about the stock sale and, in turn, bought PCI stock based on this reliance, it incurred damages from Defendants' fraud. Livid's assertions to this effect are sufficient to survive Defendants' motion to dismiss under Rule 12(b)(6).

### E.  *Statute of Limitations*

As an alternative ground for affirming the district court, Defendants argue that Livid's federal securities claim is time-barred. This court can affirm the district court's dismissal on any ground supported by the record, even if the district court did not rely on the ground. *See, e.g., United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004); *Cardenas v. Anzai*, 311 F.3d 929, 938 (9th Cir. 2002). Because the record does not establish that the statute of limitations for the federal securities claim has run, we refuse to affirm the district court on this alternative ground.

**[10]** Rule 10b-5 does not contain its own statute of limitations. The Supreme Court, however, has construed the limitations period in § 9(e) of the 1934 Act to apply to Rule 10b-5 actions. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991). Since this decision, Rule 10b-5 actions have been required to be filed within the earlier of either "one year after the discovery of facts constituting the violation" or three years after such violation. *Id.* In 2002, Congress passed the Sarbanes-Oxley Act (SOA) extending the statute of limitations for Rule 10b-5 actions. Pub. L. No. 107-204, 116 Stat. 745 (2002), codified in part at 28 U.S.C. § 1658(b). Section 804(a) states that:

a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 . . . , may be brought not later than the earlier of—

(1)   2 years after the discovery of the facts constituting the violation; or

(2)   5 years after such violation.

*Id*. § 804(a). This new statute of limitations period "appl[ies] to all proceedings . . . that are commenced on or after the date of enactment of this Act," which was July 30, 2002. *Id.* § 804(b).

Livid filed its complaint on August 1, 2002, two days after the SOA's effective date. This fact alone does not bring the complaint within the SOA's longer statute of limitations period as the SOA also contains a statement warning that the new limitations period should not be interpreted as "creat[ing] a new, private right of action." *Id*. § 804(c). The Defendants argue that when Livid filed its complaint, the pre-SOA limitations period had already run. If this were true, in order to uphold the complaint, we would have to find that Congress clearly intended the SOA's new statute of limitations to revive previously expired claims. Because we cannot conclude that the pre-SOA statute of limitations had run when Livid filed its complaint, we refuse to decide, based on this record, whether the new statute of limitations period revives dead claims.

**[11]** According to the pre-SOA standard, Livid's claim is time-barred if Livid discovered the "facts constituting the violation" it alleges a year before filing its complaint. *Lampf*, 501 U.S. at 364. The Defendants argue that this statute of limitations began to run over two years before Livid filed its com-

plaint when, on March 19, 2000, three PCI employees filed an involuntary bankruptcy petition against PCI, which put Livid on inquiry notice of the alleged fraud. This court has considered, but not made a final determination on whether actual or inquiry notice of the alleged fraud triggers the running of Rule 10b-5's statute of limitations. *Berry v. Valence Technology, Inc.*, 175 F.3d 699, 704 (9th Cir. 1999). In *Berry*, the court declined to adopt either an inquiry or actual notice standard, but noted that "[i]f we were to adopt inquiry notice, we would agree with the . . . formulation of . . . most circuits" which apply "an inquiry notice standard coupled with some form of reasonable diligence requirement." *Id.* (citation omitted). Since *Berry*, this court has left the notice standard unresolved and applies both the actual notice and inquiry-plus-due diligence standards in applicable cases.

The complaint alleges that Livid did not have actual notice of the alleged fraud until "late September 2001" when it received a report from the independent auditor for the bankruptcy proceeding. If actual notice is required to trigger the statute of limitations, we cannot hold, as a matter of law, that Livid filed its complaint more than one year after it discovered the alleged fraud. It is not evident, based on the allegations in the complaint, whether Livid timely filed this action if inquiry notice triggers the running of the statute of limitations.

**[12]** We cannot decide on this record whether under this circuit's modified inquiry notice standard Livid should have been aware of the fraud one year before it filed its complaint. This court has held that financial problems alone are generally insufficient to suggest fraud. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 878 (9th Cir. 1984). Therefore, the filing of the bankruptcy petition alone seems unlikely to satisfy the inquiry-plus-due diligence standard, especially since we have held that "[t]he question of what a reasonably prudent investor should have known is particularly suited to a jury determination," *id.* at 879. Livid alleges that it first

learned of the bankruptcy proceedings against PCI on May 25, 2001, which caused it to evaluate the filings submitted in this proceeding. This investigation revealed a verified pleading affirmatively representing that the $25 million stock sale had been received by PCI. Therefore, we cannot decide, as a matter of law, whether Livid should have been on notice of the alleged fraud one year before the complaint was filed.

*III.  State Securities Law Claim*

[13] The district court dismissed Livid's state securities claim based on its finding regarding Livid's federal securities claim that "the alleged misrepresentation was immaterial as a matter of law."[3] Because we reverse the district court's immateriality finding on Livid's federal securities claim, we also reverse the immateriality finding on the state securities law claim.

Alternatively, the district court concluded that Livid's state securities claim must be dismissed because the Defendants were not sellers of securities under the WSA. Washington case law suggests otherwise. Under Washington law, Livid need not allege that Defendants directly sold it the PCI stock, but must simply allege that Defendants were a "substantial contributive factor in the sales transaction." *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1052 (Wash. 1987); *Herrington v. Hawthorne*, 47 P.3d 567, 570-71 (Wash. Ct. App. 2000). The district court analogizes Defendants' role in Livid's stock purchase to the role of the law firm in *Hines v. Data Lines Systems, Inc.,* 787 P.2d 8, 20 (Wash. 1990). In *Hines*, the Washington Supreme Court upheld summary judg-

---

[3]Livid did not allege a violation of the WSA in its original complaint. This allegation was added in Livid's proposed First Amended Complaint. The district court refused to allow Livid leave to file either its first or second amended complaints, finding that amendment would be futile. Nonetheless, the district court considered the proposed amended complaints in its order dismissing Livid's claims.

ment for the law firm, which served as the legal preparer for a private stock offering, but otherwise had no personal contact with any of the investors alleging fraud under the WSA and was not involved in the solicitation process. The Washington Supreme Court concluded that the law firm did nothing more than provide routine professional advice about the materiality of certain facts in connection with the offer. *Id.* Therefore, the Washington Supreme Court found that others "had the predominant effect of bringing about the sale." *Id.* Defendants, however, did not simply provide routine professional advice. Instead, Livid alleges that Defendants wrote and inserted a prominent, misleading statement in the Memorandum being used to solicit investors and that this statement induced it to purchase PCI stock. Therefore, the complaint raises a genuine issue of fact as to whether Defendants served as a catalyst for the sale and, thus, can be considered sellers under the WSA. Accordingly, we hold that the district court erred in finding, as a matter of law, that Defendants were not a substantial contributive factor in the sales transaction at issue.

## IV.   State Tort Law Claims

**[14]** The district court based its dismissal of Livid's state tort claims for fraudulent and negligent misrepresentation on its holding that Livid's reliance on the notice's statements was unreasonable. Under either tort claim, Washington law requires plaintiffs to show reasonable reliance. *ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 654 (Wash. 1998) (negligent misrepresentation); *Haberman*, 744 P.2d at 1070 (fraudulent misrepresentation). Here again, because we find that the district court erred in determining, as a matter of law, that Livid failed to allege adequately reasonable reliance on the statements in the notice as to Livid's federal securities claim, we must similarly reverse the district court's decision as to Livid's state tort claims.

## CONCLUSION

Plaintiff's complaint states a claim for federal securities fraud, state securities fraud, and state tort violations — even

under the heightened pleading standards of the PSLRA. The case is remanded to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**