**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ELLEN RUBKE, as Trustee of the
1986 Rubke Living Trust; JACK
FERGUSON, individually and on
behalf of all other similarly
situated shareholders of Napa
Community Bank,

          *Plaintiffs-Appellants,*

v.

CAPITOL BANCORP LTD, a
Michigan corporation; JOSEPH D.
REID,

          *Defendants-Appellees.*

No. 07-15083

D.C. No.
CV-05-04800-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
October 22, 2008—San Francisco, California

Filed January 13, 2009

Before: Robert R. Beezer, Jane R. Roth,* and Jay S. Bybee,
Circuit Judges.

Opinion by Judge Bybee

---

*The Honorable Jane R. Roth, Senior United States Circuit Judge for
the Third Circuit, sitting by designation.

## COUNSEL

James V. Weixel, Jr., San Francisco, California; George S. Trevor, Corte Madera, California; John F. Friedemann and Kyle M. Fisher, Friedemann Goldberg LLP, Santa Rosa, California, for the plaintiffs-appellants.

Bruce A. Ericson, Kevin M. Fong, and Andrew D. Lanphere, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for the defendants-appellees.

## OPINION

BYBEE, Circuit Judge:

Ellen Rubke, as Trustee of the 1986 Rubke Living Trust, and Jack Ferguson, individually and on behalf of other similarly situated minority shareholders of Napa Community Bank, appeal the district court's dismissal of their First

Amended Complaint, which alleges that Capital Bancorp, Ltd. and its CEO and Chairman Joseph Reid violated section 11 of the Securities Act of 1933 and sections 10(b) and 14(e) of the Securities Exchange Act of 1934. They argue that the district court erred in dismissing their section 11 claims for failure to meet the pleading standards of Federal Rule of Civil Procedure 9(b) and in dismissing their section 10(b) and 14(e) claims for failure to meet the pleading standards of the Private Securities Litigation Reform Act of 1995. For the reasons discussed below, we conclude that the district court did not commit reversible error in either regard and affirm the dismissal of the plaintiffs' First Amended Complaint with prejudice.

I

Capitol Bancorp, Ltd. ("Capitol") is a bank holding company that uses an unusual business model to create and control small community banks. Capitol begins its process by soliciting investors in a proposed bank's community to provide capital in exchange for common stock in the bank. In this initial stock offering, Capitol informs potential investors that it will buy approximately 51% of the community bank's common stock and will thus be the controlling shareholder in the bank. It also warns these investors that there will likely be no public market for the bank's stock. Capitol does indicate, however, that it may buy out the investors around the third anniversary of the bank's opening—usually for a price equivalent to the book value of the common stock plus a 50% premium. Capitol provides administrative and other services to the bank (albeit not necessarily at competitive prices), but community members comprise the bank's board of directors and have general autonomy to set pricing and make other strategic decisions.

In November 2001, consistent with this basic business model, Capitol solicited investors in California's Napa region to purchase common shares of Napa Community Bank ("NCB"). Capitol also formed a holding company—First Cal-

ifornia Northern—whose primary function was to own a controlling share of NCB. Capitol then solicited separate investors in First California Northern and bought a controlling stake in that company. First California Northern thereafter bought 51% of NCB's common stock, and community investors, including Rubke and Ferguson, purchased the remaining 49%. NCB began operating in March 2002, and was quite successful.

In May 2004, Capitol began a share exchange offering for First California Northern. This exchange offer gave First California Northern's minority shareholders the opportunity to exchange their shares for shares of Capitol at a ratio that translated to a payment of 167% of the book value of First California Northern shares. The offer was accompanied by a fairness opinion prepared by JMP Financial ("JMP"). As a result of this offering, Capitol acquired 100% of shares in First California Northern.

Thereafter, in early 2005, Capitol began its anticipated attempt to acquire the minority shares of NCB (the "Exchange Offer" at issue in this case). It filed a registration statement with the SEC in April 2005, and amended that statement in May. On June 7, 2005, the effective date of the Exchange Offer, Capitol sent all NCB shareholders the offer document. In the document, Capitol offered to exchange shares of NCB common stock for shares of Capitol (which was publicly traded on the New York Stock Exchange) at a ratio equal to approximately 150% of the book value of the NCB common stock. Specifically, because Capitol estimated the book value of the NCB stock at approximately $10.60 per share, it would issue $15.90 worth of Capitol shares for each NCB share tendered (approximately 0.51 Capitol shares for every NCB share). The Exchange Offer was set to expire on June 30, 2005. The offer document was accompanied by two fairness opinions—one by JMP, and the other by Howe Barnes Investment, Inc. ("Howe Barnes"). Each concluded after analysis that the transaction was "fair from a financial point of view."

Several minority shareholders, believing that the Exchange Offer was unfair, formed a minority shareholders' committee ("MSC") to combat the offer. The MSC obtained competing fairness opinions from The Findley Group and Hoefer & Arnett, Inc., each of which stated that the fair market value of the NCB common shares was approximately $21 per share (around 33% higher than Capitol was offering).

During this time period, some NCB minority shareholders reported receiving phone calls from members of the bank's board of directors encouraging them to participate in the Exchange Offer and tender their shares to Capitol. During these phone calls, NCB's directors allegedly claimed that NCB shares would be worthless if they were not sold to Capitol through the Exchange Offer, that the NCB shareholders were required to sell their shares, that the NCB shares would be illiquid if they were not sold to Capitol, that 98% of NCB's shareholders had already tendered their shares to Capitol, and that all members of NCB's board of directors had already tendered their shares to Capitol.

The Exchange Offer closed on June 30, 2005. Capitol, through the offer, acquired approximately 87% of NCB stock. Several minority shareholders who tendered their stock to Capitol, however, filed suit, claiming that Capitol was able to purchase their shares at a price below fair market value because of misrepresentations made in the registration statement, the offer document, and the telephone calls.

The plaintiffs in this action filed their original complaint on November 23, 2005, in the Northern District of California. The plaintiffs formulated their claims as actions under sections 11 and 15 of the Securities Act of 1933 ("Securities Act"); sections 10(b), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"); and state law violations of the California Corporations Code. On June 16, 2006, the district court dismissed the original complaint, holding that the claims were subject to heightened pleading standards

under Federal Rule of Civil Procedure 9(b) and/or the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and that the complaint failed to meet these heightened standards. Although the state law claims were dismissed with prejudice, the court gave plaintiffs leave to file an amended complaint remedying the federal claims.

The complaint at issue in this case was filed shortly thereafter, on July 31, 2006. This First Amended Complaint added a claim under section 12(a)(2) of the Securities Act, but otherwise retained the same federal claims alleged in the original complaint. Again, the defendants moved to dismiss the complaint, and the district court granted that motion on October 27, 2006. *See Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124 (N.D. Cal. 2006). The district court held that the plaintiffs' Securities Act claims failed to satisfy the pleading standards of Federal Rule of Civil Procedure 9(b), that the plaintiffs' Exchange Act claims failed to satisfy the pleading requirements of the PSLRA, and that plaintiffs' control person liability claims failed because the plaintiffs had failed to adequately plead a primary violation under either Act. *See id.* at 1152. Although the court dismissed only the Securities Act sections 11, 14(e), and 15, and the Exchange Act section 20(a) claims with prejudice—and gave the plaintiffs leave to amend the Securities Act section 12(a)(2) claim and the Exchange Act section 10(b) claim—the plaintiffs decided not to file a second amended complaint, and instead filed a "Notice of Intention Not to File an Amended Complaint." The district court entered judgment on this motion on December 13, 2006 by dismissing all the claims with prejudice, and the plaintiffs filed a timely notice of appeal to this court.[1]

---

[1]Rubke challenges only the dismissal of her claims under section 11 of the Securities Act and sections 10(b) and 14(e) of the Exchange Act. Rubke makes no argument about the dismissal of her claims under sections 12 and 15 of the Securities Act and section 20(a) of the Exchange Act. Thus, these claims have been forfeited on appeal. *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).

## II

We review *de novo* dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## A

**[1]** The plaintiffs (collectively, "Rubke") first challenge the district court's determination that their First Amended Complaint failed to allege with the particularity required by Federal Rule of Civil Procedure 9(b) that Capitol's registration statement in connection with the NCB Exchange Offer contained material misrepresentations in violation of section 11 of the Securities Act. Section 11 of the Securities Act contains a private right of action for purchasers of a security if the issuer publishes a registration statement in connection with that security that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). To prevail in such an action, a plaintiff must prove "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (internal quotation marks omitted).

**[2]** Although the heightened pleading requirements of the PSLRA do not apply to section 11 claims, *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002), plaintiffs are required to allege their claims with increased particularity under Federal Rule of Civil Procedure 9(b) if their complaint "sounds in fraud." *See Daou*, 411 F.3d at 1027. To ascertain whether a complaint "sounds in fraud," we must normally determine, after a close examination of the language and structure of the complaint, whether the complaint "allege[s] a

unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Where as here, however, a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud. *See Daou*, 411 F.3d at 1028.

**[3]** Because Rule 9(b) thus applies to Rubke's section 11 claims, her First Amended Complaint must "state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). In other words, the complaint must "set forth what is false or misleading about a statement, and why it is false." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). This requirement "can be satisfied 'by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants.' " *Id.* (quoting *GlenFed*, 42 F.3d at 1549).

1

**[4]** Rubke's First Amended Complaint alleges that six types of statements in Capitol's registration statement were either affirmatively misleading or were misleading by omission. First, according to the complaint, Capitol's registration statement misled the NCB minority shareholders by incorporating two fairness opinions (by JMP and Howe Barnes) concluding that the transaction was "financially fair" to the minority shareholders.

Because these fairness determinations are alleged to be misleading opinions, not statements of fact, they can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991); *In re McKesson*

*HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000). Thus, the First Amended Complaint must allege with particularity that Capitol's directors and officers believed the Exchange Offer was unfair.

**[5]** The First Amended Complaint fails to allege that either JMP, Howe Barnes, or Capitol believed the deal offered the minority shareholders was unfair. Although the complaint alleges that the MSC's competing Findley Group fairness opinion was circulated to members of Capitol, and thus that Capitol should have known that JMP's opinion was unreliable, nothing in the complaint indicates that anyone at Capitol actually saw or assessed the Findley Group fairness report. The complaint only alleges, "[b]ased on information and belief," that "copies of the [Findley Group] Fairness Opinion and the Fairness Memorandum, and/or a written or oral summary of their terms, were delivered to Capitol and Reid, and/or Capitol and Reid should have known about the substance of the [report]." The complaint does not indicate on what facts this belief is formed. Similarly, Rubke's allegations that JMP's prior relationship with Capitol should have alerted Capitol to the investment bank's biases do not adequately allege subjective falsity. Although the First Amended Complaint alleges that "in 26 of 30 [prior] transactions, JMP Financial, Inc.'s fairness opinions concluded that a valuation of 150% of book value (or very minor deviations from 150% of book value) were fair, and in the other four, the highest valuation . . . was approximately 175% of book value and the lowest . . . approximately 124% of book value," it fails to plead facts indicating that Capitol believed these prior valuations were incorrect.

2

Second, according to the First Amended Complaint, Capitol's registration statement was misleading because it failed to mention the fact that one year prior to the tender offer, Capitol initiated a similar offer for shares of NCB's holding company,

First California Northern, and paid approximately 167% of book value for those shares.

**[6]** A securities fraud complaint based on a purportedly misleading omission must "specify the reason or reasons why the statements made by [the defendant] were misleading or untrue, not simply why the statements were incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). There is no indication that the omitted information about the First California Northern share exchange made any statement in Capitol's registration documents false or misleading. The First Amended Complaint fails to detail any language in Capitol's registration statement that implies that Capitol did not enter into a previous transaction with the minority shareholders of First California Northern. It also fails to enumerate the specific language in the registration statement that allegedly was made misleading by its failure to mention the earlier transaction.

**[7]** Also, as the district court noted, information concerning the First California Northern tender offer was publicly available. As many of our sister circuits have recognized, "[i]t is pointless and costly to compel firms to reprint information already in the public domain." *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 517 (7th Cir. 1989); *see also Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 343 (3d Cir. 1999); *Siebert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978). Section 11 does not require the disclosure of all information a potential investor might take into account when making his decision: for example, although an investor might weigh the general trends of the market when deciding whether to buy or hold, it would be unreasonable to require every firm making a tender offer to chronicle the historical performance of the New York Stock Exchange to avoid liability under securities disclosure laws. In many cases, this information will not only be extraneous, but may by its very volume confuse and mislead potential investors. The fact that Capitol purchased a dif-

ferent security nearly a year earlier for a slightly higher price was simply extraneous to the Exchange Offer.

### 3

Third, according to the First Amended Complaint, Capitol materially misrepresented NCB's future income projections in the registration statement. Specifically, the complaint notes that "Page 28 of the Prospectus included in the Registration Statement . . . stated that 'Capitol believes that NCB's profitability will increase.' " This projection, the complaint alleges, "failed to adequately disclose the dramatic growth in NCB's net income, retained earnings and book value in 2005 that Capitol knew was occurring." Essentially, Rubke appears to argue that because the statement "profitability will increase" did not indicate the extraordinary nature of NCB's growth, the Prospectus should have included more expressive language such as "Capitol believes NCB's profitability will *dramatically* increase."

**[8]** In addition to the fact that Capitol *did* disclose that NCB's net income for the first quarter of 2005 was nearly four times as large as that for the first quarter of 2004, this allegation clearly does not state a claim under section 11. This allegation merely squabbles about the adverbs used in the registration statement, and fails to indicate that the language used was false. Furthermore, there is no duty to disclose income projections in a prospectus. *See In re Lyondell Petrochemical Co. Sec. Litig.*, 984 F.2d 1050, 1053 (9th Cir. 1993).

### 4

Fourth, according to the First Amended Complaint, several references in the offer document and elsewhere to a preconceived "plan" to sell NCB shares to Capitol on the three year anniversary of NCB's operations misled investors into believing that they had a moral or legal obligation to tender their shares to Capitol. Thus, Rubke claims, Capitol had an obliga-

tion to disabuse the shareholders of this notion by "disclos-[ing] in the Registration Statement that the NCB shareholders had no obligation, legal or moral, to participate, and that they were not bound by any 'plan.' "

**[9]** As with the other omission allegations, the complaint fails to demonstrate that the failure to include this disclaimer was misleading. There is no allegation in the complaint that the characterization of the tender offer as part of a "plan" was false (in fact, although the third anniversary tender offer was not guaranteed, it was suggested as typical in the original investment documents). Moreover, there were numerous disclosures in the registration statement and offer documents indicating that accepting the tender offer was optional. It is difficult to imagine that a shareholder who was not adequately appraised of her options by these existing disclosures would suddenly understand after being exposed to simply one more disclaimer.

5

**[10]** Fifth, according to the First Amended Complaint, Capitol's registration statement also contained misleading references to a "premium" that caused the NCB minority shareholders to believe that accepting the tender offer would give them a premium on their shares' fair value. As the district court noted, however, these allegations simply misconstrue the language in the registration statement. The language in the registration statement specifically referred to a premium to the "book value" of the NCB shares, not a premium to the fair value of the shares.

6

Finally, the First Amended Complaint alleges that Capitol made misleading statements in connection with the registration statement through telephone communications with the minority shareholders. According to the complaint, members

of the NCB board were encouraged by Capitol to call the minority shareholders and convince them that, *inter alia*, their shares would be worthless if not sold to Capitol.

**[11]** Although these allegations are fashioned as claims under section 11, because they were allegedly made after the registration statement became effective on June 7, 2005, they cannot be a basis for relief under that section. A claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective. *Cooperman v. Individual, Inc.*, 171 F.3d 43, 47 (9th Cir. 1999). Capitol could not know on the effective date of the registration statement that board members of NCB would engage in potentially deceptive telephone calls later that month, and therefore could not include a disclaimer to that effect at the time the registration statement was published.

B

Rubke also challenges the district court's determination that her claims under section 10(b) of the Exchange Act, which employ the same factual allegations as her section 11 claims, fail to meet the pleading standards of the PSLRA.

**[12]** Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), in combination with SEC Rule 10b-5, prohibits "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c). To prevail on a section 10(b) claim, a plaintiff must prove "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Daou*, 411 F.3d at 1014. At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. Thus, a plaintiff must

plead falsity with particularity: a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Unlike Rule 9(b), the PSLRA also requires a plaintiff to plead scienter with particularity: a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

**[13]** The Supreme Court recently defined "strong inference of scienter," concluding that a complaint will survive a motion to dismiss under the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). The Court cautioned that in performing this inquiry, courts should determine whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 2509. Thus, we can no longer summarily dismiss a complaint whose individual allegations are insufficient under the PSLRA. Instead, we must perform a second holistic analysis to determine whether the complaint contains an inference of scienter that is greater than the sum of its parts. *See South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008).

**[14]** Because the inquiry into whether plaintiffs have pled falsity with the requisite particularity under the PSLRA is nearly identical to that under Federal Rule of Civil Procedure 9(b), the foregoing analysis of Rubke's section 11 claims also demonstrates (with the exception of the telephone call allega-

tions[2]) that Rubke's First Amended Complaint fails to allege a material misrepresentation or omission in connection with the purchase or sale of securities. Thus, the only issue under section 10(b) is whether the complaint's allegations regarding telephone calls to minority shareholders adequately plead falsity and scienter under the PSLRA.

The First Amended Complaint details a large number of telephone conversations between one of NCB's board members, Dennis Pedisich, and NCB minority shareholders in which Pedisich exhorted the shareholders to accept Capitol's tender offer. The complaint alleges that in these phone calls, Pedisich told the shareholders that if they failed to tender their NCB shares to Capitol as part of the Exchange Offer, "[their] shares were likely to wind up as worthless pieces of paper" and that the shareholders would "lose [their] investment[s]," that the shareholders "had no choice but to tender [their] NCB shares to Capitol," that the shares would be illiquid if not sold to Capitol, that 98% of minority shareholders were going to tender, and that "all of the members of the NCB board of directors were tendering their shares to Capitol." All of these statements, Rubke contends, were materially false or misleading.

[15] Because the First Amended Complaint only provides detailed allegations about Pedisich's calls, however, and fails to allege with particularity that Capitol or its officers either made similar calls themselves or exhorted Pedisich to make the calls, these allegations are not sufficient to meet the PSLRA's pleading requirements for either falsity or scienter.

Dennis Pedisich, although he was in contact with Capitol

---

[2]Because we found that Rubke could not sustain a claim under section 11 based on allegedly omitted information that did not exist at the time the registration statement became effective, we did not have the occasion to analyze Rubke's telephone call allegations under section 11. *See supra* Part II.A.6.

and its executive officers throughout the time covered by the complaint, was not an employee of Capitol. We acknowledge that this does not make his misrepresentations to the NCB minority shareholders irrelevant. In *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996), we recognized that where the plaintiff adequately alleged that the defendant "used . . . third parties to disseminate false information to the investing public," the defendant "cannot escape liability simply because it carried out its alleged fraud through the public statements of third parties." However, *Xoma* does not stand for the proposition that a plaintiff only has to allege the bare possibility that such third-party dissemination occurred to avoid a motion to dismiss. Instead, these third-party allegations are subject to the same pleading requirements as other securities fraud allegations.

[16] The First Amended Complaint fails to allege with the requisite particularity that Pedisich called the minority shareholders at the behest of Capitol or its executive officers. The complaint states that "in a meeting of the board of directors on May 26, 2005 in the NCB boardroom in Napa, California, and on other occasions [Pedisich and other NCB directors] were exhorted by Reid [Capitol's CEO] to call or otherwise communicate with the NCB shareholders on behalf of Capitol." This allegation, the complaint admits, is based only on "information and belief." As such, in order to meet the PSLRA's standard for pleading falsity, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see Daou*, 411 F.3d at 1015. Rubke has failed to reveal "the sources of her information" with regard to the telephone conversations, *see In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), and has not otherwise described how she knows that Capitol "exhorted" Pedisich to make the calls. Thus, she has not properly alleged the falsity of these statements under the PSLRA. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 646 n.10 (5th Cir. 2005) ("We note that [the plaintiff's complaint] has not explained the factual basis for its information and belief

that Burmeister, Yokley and Mies participated in the telephone conversation in question. Accordingly, we decline to consider the allegation with respect to those defendants in determining the sufficiency of R2's complaint.").

The First Amended Complaint has also failed to allege with particularity that Capitol made any of the statements or omissions "intentionally or with deliberate recklessness." *Daou*, 411 F.3d at 1015. The complaint's allegations about Pedisich's telephone calls do not adequately plead that *the defendants* in this case had the requisite mental state. The complaint's remaining allegations concerning Capitol's mental state allege nothing but "motive and opportunity," which is not enough to create a strong inference of scienter. *Silicon Graphics*, 183 F.3d at 974. The complaint alleges that Capitol "[was] motivated to [acquire shares of NCB] for financial as well as strategic reasons related to taking total control of NCB to maintain Capitol's business plan and to freeze out dissident shareholders;" that Capitol was motivated to acquire the NCB shares at a discount to fair value; that Capitol was motivated to acquire over 80% of the NCB stock for tax purposes, and over 90% in order to effect a squeeze-out of the minority shareholders; and that Capitol needed to set a precedent so that it could continue to enforce the 150% buyout in future business ventures. These allegations are hardly indicative of scienter. Instead, they merely restate the obvious: that Capitol would benefit from buying out the minority shareholders. Even considered holistically, under *Tellabs*, these motive allegations cannot support a strong inference of scienter.

## C

Finally, Rubke argues that the district court erred in dismissing her claims under section 14(e) of the Exchange Act for failure to meet the PSLRA's pleading standards. Section 14(e) was enacted as one of the 1968 Williams Act amendments to the Exchange Act, for the purpose of "insur[ing] that public shareholders who are confronted by a cash tender offer

for their stock will not be required to respond without adequate information." *Plaine v. McCabe*, 797 F.2d 713, 717 (9th Cir. 1986) (quoting *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975)) (internal quotation marks omitted). It prohibits a person from making an untrue statement of material fact or a misleading omission in connection with a tender offer. 15 U.S.C. § 78n(e).

**[17]** We have previously applied the PSLRA's falsity pleading requirement to claims under section 14(e). *Brody*, 280 F.3d at 1005-06. Accordingly, the analysis of Rubke's section 14(e) claims is identical to that of her section 10(b) claims with regard to falsity. As analyzed above, the First Amended Complaint has failed to prove that any of Capitol's alleged misstatements and omissions in the registration document were misleading, and has failed to indicate the facts supporting her "information and belief" that Capitol exhorted Pedisich to call the minority shareholders and make false statements. *See* 15 U.S.C. § 78u-4(b)(1). Thus, her section 14(e) claims are inadequately pled.

### III

**[18]** When a district court dismisses a complaint without leave to amend, we must review for abuse of discretion, *see Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002), and find it "improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings*, 416 F.3d at 946. The district court's discretion is particularly broad in cases such as this, where a plaintiff has previously been granted leave to amend and fails to add the requisite particularity to her claims. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097-98 (9th Cir. 2002). The district court was well within its discretion in dismissing Rubke's claims with prejudice. Rubke failed to cure the deficiencies in her Securities Act section 11 claims and Exchange Act section 14(e) claims after a prior dismissal. Although the district court originally granted Rubke leave to amend her Exchange Act

section 10(b) claims, and Rubke voluntarily moved for the district court to dismiss them with prejudice, this voluntary dismissal does not change our analysis.

## IV

Rubke's First Amended Complaint fails to allege with the requisite particularity that Capitol and its CEO Reid made materially misleading statements and omissions in connection with the Exchange Offer in violation of section 11 of the Securities Act and sections 10(b) and 14(e) of the Exchange Act. We therefore affirm the district court's dismissal of the First Amended Complaint with prejudice.

AFFIRMED.